STATE of Minnesota, Respondent,

v.

Gilberto ARRENDONDO, Appellant.

No. C0–94–879.

Supreme Court of Minnesota.

May 26, 1995.

John M. Stuart, State Public Defender, Evan W. Jones, Asst. State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Robert A. Stanich, Asst. Atty. Gen., St. Paul, and Kathryn M. Keena, Lyon County Atty., Marshall, for respondent.

## OPINION

PAGE, Justice.

Gilberto Arrendondo was convicted by a Lyon County jury of first-degree felony murder under Minn.Stat. § 609.185(3) (1994), second-degree intentional murder under Minn.Stat. § 609.19(1) (1994), second-degree felony murder under Minn.Stat. § 609.19(2) (1994), and first-degree manslaughter under Minn.Stat. § 609.20(1) (1994), arising out of the beating, robbery, and murder of Ramon

Guardiola on July 17, 1993.[1] The trial court sentenced Arrendondo to life imprisonment for the first-degree felony murder conviction.

In this appeal, Arrendondo contends his conviction for first-degree felony murder must be reversed because the evidence presented at trial was insufficient to prove that: (1) the murder and the underlying felony, aggravated robbery, occurred during one continuous chain of events; and (2) he remained an accomplice during the murder. We affirm.

On Saturday, July 17, 1993, Arrendondo spent the afternoon talking and drinking beer with Julio Rodriguez, Israel "Ray" Gaitan, and Juan Orduna[2] at Gaitan's house, which was adjacent to the trailer park where Guardiola lived. During the evening, three juveniles stopped at the house and asked Rodriguez to purchase alcohol for them. While at the liquor store, Rodriguez saw Guardiola and decided to walk back toward the trailer park with him. When the two reached Gaitan's house, Rodriguez invited Guardiola in for a drink. Guardiola initially refused, saying Gaitan did not like him, but acquiesced when Rodriguez said there would be no problems because everyone was in a good mood. Arrendondo, Gaitan, and Orduna were still present and all five men spent the evening drinking.

During the course of the evening, a spontaneous decision was made to rob Guardiola. Arrendondo and Rodriguez attempted to render Guardiola unconscious by serving him two alcoholic drinks laced with Tegretol, a prescription anti-seizure medication, but Guardiola did not pass out. Shortly thereafter, Arrendondo, Rodriguez, Gaitan, and Guardiola went to the backyard,[3] where Arrendondo, Rodriguez, and Gaitan began kicking and punching Guardiola.[4] Arrendondo also "jumped in the air and * * * stomped on" Guardiola's forehead. During the beating, Rodriguez took Guardiola's billfold from his pocket, removed five $20 bills, and replaced the billfold. At some point Gaitan, indicating they had better get rid of Guardiola, went into the house and returned with a shotgun. Arrendondo told Gaitan it would "be worse" if he shot him, and Orduna, who had come to investigate, took the shotgun from Gaitan. Arrendondo then signaled Gaitan to take Guardiola to a drainage ditch near the house. Orduna told them that what they were planning to do was "wrong."

Arrendondo walked Guardiola, who was still alive, to the ditch, which was filled with waist-deep water and the two fell in. When Arrendondo surfaced holding a stick, Gaitan, who had also entered the water, told Arrendondo not to hit Guardiola because the bruises would show up in the autopsy.[5] Gaitan began choking Guardiola and held him underwater until he was dead. After Guardiola was dead, Gaitan, Arrendondo, and Rodriguez hid his body in a nearby culvert. They then returned to Gaitan's house, showered, put on clean clothes, and split the money taken from Guardiola's billfold, each receiving a $20 bill.[6] The men agreed that none of them should talk about what had taken place. Gaitan threatened to kill anybody who did talk, and Arrendondo threatened to physically harm anyone who said anything about what they had done. Two days later, Arrendondo and Rodriguez left Minnesota by bus for Eagle Pass, Texas, where they were eventually arrested.

---

1. Arrendondo was acquitted of premeditated first-degree murder under Minn.Stat. § 609.185(1) (1994).

2. Arrendondo, Rodriguez, and Orduna were also sniffing paint fumes.

3. One witness testified that portions of the beating took place in the kitchen of the house.

4. Arrendondo was wearing tennis shoes and Rodriguez was wearing steel-toed shoes. No evidence was presented as to the type of shoe Gaitan was wearing.

5. Despite this testimony, the coroner who performed the autopsy, testified that the "linear or straight-shaped railroad track contusions" that appeared on Guardiola were consistent with being struck by a pipe, stick, or bat.

6. In splitting the money, they gave $20 to Orduna. Although Orduna received a share of the money taken from Guardiola's wallet, the evidence presented at trial indicates that he did not participate in the robbery or murder of Guardiola and was never charged with any crime relating to the robbery or murder.

Guardiola's body was discovered on Monday, July 19, 1993. An autopsy was performed on the body by Dr. Brad Randall, who testified that Guardiola suffered: a cut on the inside and outside of his left lower lip; abrasions on the right side of his lips; an abrasion and bruise on the bridge of his nose; an abrasion and bruise on his forehead; three abrasions on his left ear and one on his right; a two-inch skull fracture behind his right ear; a large bruise on his scalp over the skull fracture; bruises on the back of his right hand and arm; linear bruises along his right side and lower back; bruises around the base of his neck; bruising and fractures in the cartilage of his voice box; and a fractured left fourth rib. Dr. Randall testified that Guardiola's injuries were consistent with being hit, kicked, or choked, and that based on these injuries, there were three possible causes of Guardiola's death: head injury, specifically the skull fracture behind Guardiola's right ear; neck injury, specifically the bruising and fractures in the cartilage of his voice box; or drowning, given the location where the body was found. According to Dr. Randall, neither the skull fracture nor the neck injuries were necessarily fatal, although either could have been.

■ Arrendondo argues his felony murder convictions must be reversed because the evidence presented at trial was not sufficient to prove that: (1) the murder and the underlying felony, aggravated robbery, occurred during one continuous chain of events; and (2) he remained an accomplice during the murder. When considering the sufficiency of the evidence, we review the evidence in the light most favorable to the verdict to determine if it was sufficient to permit the jury, while acting with due regard for the need to overcome the presumption of innocence by proof beyond a reasonable doubt, to reach the verdict it did. *State v. Webb*, 440 N.W.2d 426, 430 (Minn.1989); *State v. Moore*, 481 N.W.2d 355, 360 (Minn.1992). A person is guilty of first-degree felony murder if he "causes the death of a human being with intent to effect the death of the person or another, while committing or attempting to

commit * * * aggravated robbery." Minn. Stat. § 609.185(3) (1994).

Arrendondo first argues Guardiola's death was not caused while Arrendondo was committing or attempting to commit aggravated robbery because the time period between the aggravated robbery and the murder resulted in a break in the chain of events.[7] His argument is based on his contention that the robbery was completed when the money was removed from Guardiola's billfold, and that the murder was not committed until Gaitan drowned Guardiola in the ditch.

We have previously stated that where the underlying felony is completed before the homicide occurs, a conviction under the felony murder statute may still be proper:

Even if the underlying felony is complete before the homicide occurs, felony murder may still be applicable. [*Bellcourt v. State*, 390 N.W.2d 269, 274 (Minn.1986)]; *State v. Murphy*, 380 N.W.2d 766, 771 n. 3 (Minn.1986). Hence, the felony murder rule encompasses a killing by one trying to escape or conceal a felony as long as there was no "break in the chain of events between the felony and the killing," *Murphy*, 380 N.W.2d at 771 n. 3, or as long as the "fatal wound" was inflicted during the "chain of events" so that the requisite time, distance, and causal relationship between the felony and killing are established. 2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 7.5(f), at 223 n. 88 (1986). *See also State v. Lashley* [233 Kan. 620], 664 P.2d 1358, 1368 (Kan.1983).

*State v. Russell*, 503 N.W.2d 110, 113 (Minn. 1993).

■ We believe application of the felony murder statute was proper in this case. Arrendondo, Rodriguez, and Gaitan unsuccessfully attempted to drug Guardiola, then forcibly beat and robbed him, took him into a water-filled drainage ditch, beat him with a stick causing linear bruises on his back, held him under water in the ditch, and hid his

7. There is no evidence in the record regarding the length of time between the removal of the money from Guardiola's billfold and the time of

Guardiola's death. Testimony at trial suggested that the entire chain of events took from 45 minutes to 1 hour and 15 minutes.

body in a nearby culvert.[8] There was sufficient evidence presented at trial for the jury to conclude that Guardiola's skull and neck injuries, either of which might have been the fatal injury, were inflicted during the beating and robbery. Further, we conclude there was sufficient evidence presented at trial for the jury to conclude that the drowning, assuming it was the cause of Guardiola's death, occurred during the course of a continuous chain of events that began with the attempt to drug him. Whatever the cause of Guardiola's death, there was sufficient evidence for the jury to conclude that the murder and predicate felony were committed during one continuous chain of events.

■■■ Arrendondo also argues that the evidence was insufficient to prove he was an accomplice to the murder. "A person is criminally liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime." Minn.Stat. § 609.05, subd. 1 (1994). A criminal defendant's intent may be inferred from the defendant's presence, companionship, and conduct before, during, and after the commission of the offense. *See State v. Russell,* 503 N.W.2d at 114. However, inaction, mere knowledge, or passive acquiescence do not satisfy the requirements for accomplice liability. *Id.* Further, accomplice liability may be avoided by the criminal defendant who, prior to the commission of the crime, abandons his criminal purpose "and makes a reasonable effort to prevent the commission of the crime." Minn.Stat. § 609.05, subd. 3 (1994). The state proves accomplice liability by showing that the defendant had a knowing role in the commission of the crime and did nothing to thwart its completion. *Russell,* 503 N.W.2d at 114.

■■■ Taken in the light most favorable to the verdict, the evidence presented at trial was sufficient for the jury to conclude that Arrendondo participated at every turn in the events which resulted in Guardiola's murder. Although the record shows that Arrendondo

helped stop Gaitan from shooting Guardiola because it would "be worse," it also shows that Arrendondo: was involved in the initial beating and stomping of Guardiola; continued to beat Guardiola after Rodriguez had taken his wallet and after the shotgun was taken from Gaitan; signaled Gaitan to take Guardiola to the ditch; walked Guardiola to the ditch; took Guardiola into the ditch; and beat Guardiola with a stick. Arrendondo was present and actively participated in all of the events leading to Guardiola's murder, and then threatened to physically harm Rodriguez, Gaitan, and Orduna if they told anyone of the murder. We conclude there was sufficient evidence for the jury to find that Arrendondo neither abandoned his criminal purpose nor made a reasonable effort to prevent Guardiola's murder. Because Arrendondo remained an active participant throughout the chain of events leading to Guardiola's murder, he was properly convicted of felony murder under Minn.Stat. §§ 609.185(3) and 609.19(2).

Affirmed.

---

8. Arrendondo asserts that Guardiola's death was caused by drowning at the hands of Gaitan. The coroner identified three possible causes of Guardiola's death. Because the record establishes that any of the three, either alone or in combination, could have caused Guardiola's death, we need not and do not decide which one was the cause.