**Gilberto ARREDONDO, petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

**No. A07–1983.**

Supreme Court of Minnesota.

Aug. 14, 2008.

Lawrence Hammerling, Chief State Appellate Public Defender, St. Paul, MN, for appellant.

Theodore David Sampsell–Jones, Special Assistant State Public Defender, St. Paul, MN, for appellant.

Lori Swanson, Attorney General, St. Paul, MN, for respondent.

Richard Robert Maes, Lyon County Attorney, Marshall, MN, for respondent.

## OPINION

GILDEA, Justice.

This case comes to us on appeal from the postconviction court's denial of appellant Gilberto Arredondo's petition for postconviction relief. Arredondo was convicted of first-degree felony murder for the 1993 death of Ramon Guardiola. We affirmed the conviction on direct appeal. *State v. Arrendondo*, 531 N.W.2d 841 (Minn.1995).[1] Arredondo subsequently pe-

titioned for postconviction relief, but the postconviction court denied the petition without holding an evidentiary hearing. We affirm.

The facts underlying the crime and the evidence against Arredondo are set forth in our opinion in Arredondo's direct appeal. *See Arrendondo*, 531 N.W.2d 841. Arredondo was indicted for first-degree premeditated murder, Minn.Stat. § 609.185(1) (2000); first-degree felony murder, Minn.Stat. § 609.185(3) (1996); second-degree intentional murder, Minn. Stat. § 609.19(1) (1994); and second-degree felony murder, Minn.Stat. § 609.19(2) (1994), for Ramon Guardiola's death. At Arredondo's request, in addition to the charges in the indictment, the offense of first-degree misdemeanor manslaughter, Minn.Stat. § 609.20(2) (1994), was submitted to the jury and the jury was instructed on the elements of that offense pursuant to the CRIMJIGs then in effect. *See* 10 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Criminal*, CRIMJIG 11.21, 11.22 (3d ed.1990). A Lyon County jury found Arredondo guilty of first-degree felony murder, second-degree intentional murder, second-degree felony murder, and first-degree misdemeanor manslaughter, but not guilty of first-degree premeditated murder. The district court convicted Arredondo of first-degree felony murder and sentenced him to life in prison.

Arredondo appealed his conviction to this court, arguing that the evidence "was insufficient to prove that: (1) the murder and the underlying felony, aggravated robbery, occurred during one continuous chain of events; and (2) he remained an accomplice during the murder." *Arrendondo*,

1. Arredondo's name was misspelled as "Arrendondo" in the opinion deciding Arredondo's direct appeal.

531 N.W.2d at 843. We affirmed the conviction. *Id.*

Arredondo subsequently filed a petition for postconviction relief, alleging that: (1) the jury returned legally inconsistent verdicts, (2) testimony of a key State witness was admitted in violation of the rules of evidence, (3) his right of consular assistance under the Vienna Convention was violated, and (4) the defense of voluntary intoxication should have been presented to the jury. Arredondo alleged that both trial and appellate counsel rendered ineffective assistance by failing to pursue each of these errors. The postconviction court concluded that the underlying claims were *Knaffla*-barred and that Arredondo failed to allege facts that would entitle him to relief on the ineffective assistance of counsel claims. The postconviction court nonetheless considered the substantive issues, determined that Arredondo's claims were all without merit, and denied relief without conducting an evidentiary hearing. Arredondo now appeals the postconviction court's denial of relief, asserting the same issues with the exception of the voluntary intoxication defense.

■■■ When reviewing a postconviction court's decision, we review questions of law de novo and findings of facts for abuse of discretion. *Leake v. State*, 737 N.W.2d 531, 535 (Minn.2007). The postconviction court is required to conduct an evidentiary

hearing " '[u]nless the petition and the files and records of the proceedings conclusively show that the petitioner is entitled to no relief.' " *Id.* (quoting Minn.Stat. § 590.04, subd. 1 (2006)). Argumentative assertions by the petitioner without factual support are insufficient to necessitate a hearing. *Gail v. State*, 732 N.W.2d 243, 249 (Minn. 2007).

I.

We turn first to Arredondo's claim that the jury returned legally inconsistent verdicts, and that both trial and appellate counsel rendered ineffective assistance by failing to pursue the error. The postconviction court concluded that the verdicts were not inconsistent; in the alternative, based on *State v. Netland*, 535 N.W.2d 328 (Minn.1995), the court concluded that Arredondo " 'got exactly what he asked for' " by requesting that the lesser-included offense of first-degree misdemeanor manslaughter be submitted to the jury.[2] We review the legal consistency of a verdict de novo. *State v. Laine*, 715 N.W.2d 425, 434–35 (Minn.2006).

■■■ Because an inconsistent verdict would have been evident from the trial record, Arredondo either knew or should have known of this issue at the time of his direct appeal. Having failed to raise it on direct appeal, the issue is now barred by

---

**2.** In *Netland* we were asked to consider whether a guilty verdict of third-degree depraved mind murder is legally inconsistent with a guilty verdict of first-degree premeditated murder. 535 N.W.2d at 331. The "defendant specifically requested the trial court to submit third-degree depraved mind murder" to the jury. *Id.* Over "vigorous objection of the state," the trial court "submitted third-degree depraved mind murder" to the jury and gave "the defendant's requested instruction." *Id.* We held that "[u]nder these circumstances—namely, that the defendant got

exactly what he asked for—we need not and do not address the issue of the legal consistency of the jury's verdicts." *Id.* Like the defendant in *Netland*, Arredondo requested that the misdemeanor manslaughter instruction be given to the jury. But, as set forth below, we determine that Arredondo's appellate counsel could have legitimately concluded that the legally inconsistent verdicts claim was without merit. We therefore do not reach the issue of whether our analysis in *Netland* operates to preclude postconviction review of this claim.

the *Knaffla* rule.[3] The same is true for his claim of ineffective assistance of trial counsel related to this issue. *See White v. State*, 711 N.W.2d 106, 110 (Minn.2006) (noting "that an ineffective assistance of trial counsel claim is generally *Knaffla*-barred in a postconviction petition if the claim can be decided on·the basis of the trial record and the briefs"); *see also Leake*, 737 N.W.2d at 535–36; *Black v. State*, 560 N.W.2d 83, 85 (Minn.1997).[4]

But we have said that "[c]laims of ineffective assistance of appellate counsel on direct appeal are not barred by the *Knaffla* rule in a first postconviction appeal because they could not have been brought at any earlier time." *Leake*, 737 N.W.2d at 536; *see also Schneider v. State*, 725 N.W.2d 516, 521 (Minn.2007); *Townsend v. State*, 723 N.W.2d 14, 19 (Minn.2006). Because this is Arredondo's first petition for postconviction relief, we conclude that his ineffective assistance of appellate counsel claim is properly before us.

 In order to succeed on an ineffective assistance of appellate counsel claim, Arredondo must show that his appellate " 'counsel's representation fell below an objective standard of reasonableness' " and that " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceed-

ing would have been different.' " *Fields v. State*, 733 N.W.2d 465, 468 (Minn.2007) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Appellate counsel is not required to raise all possible claims on direct appeal, and counsel need not raise a claim if she "could have legitimately concluded that it would not prevail." *Cooper v. State*, 745 N.W.2d 188, 193 (Minn.2008). Representation by Arredondo's appellate counsel thus did not fall below an objective standard of reasonableness if "counsel could have legitimately concluded that [Arredondo] would not have prevailed" on the legally inconsistent verdict claim. *See Schneider*, 725 N.W.2d at 523; *see also Cooper*, 745 N.W.2d at 192–93; *Leake*, 737 N.W.2d at 536. To determine whether Arredondo's appellate counsel could have legitimately concluded that Arredondo would not prevail on the claim of legally inconsistent verdicts, we turn to an examination of the merits of that claim.

 We have said that "[v]erdicts are legally inconsistent when proof of the elements of one offense negates a necessary element of another offense." *State v. Cole*, 542 N.W.2d 43, 50 (Minn.1996). Reversal is warranted if a jury renders legally inconsistent verdicts. *State v. Moore (Moore II )*, 481 N.W.2d 355, 360 (Minn.1992).

3. Under *State v. Knaffla*, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976),·claims raised by the petitioner in a direct appeal and claims known but not raised in the direct appeal will not be considered in ̦a postconviction proceeding. Likewise, a claim that the petitioner should have known of ̇at the time of direct appeal will not be considered in a postconviction proceeding. *See Black v. State*, 560 N.W.2d 83, 85 (Minn.1997). Exceptions to the *Knaffla* rule exist for novel claims, the legal basis of which was not available on direct appeal, or if fairness requires review and "the petitioner did not deliberately and inexcusably fail to raise the claim on direct appeal." *Perry v. State*, 731 N.W.2d 143, 146

(Minn.2007). Arredondo does not argue that either exception applies to his claims.

4. Despite the general *Knaffla* bar, " 'a claim of ineffective assistance of trial counsel that cannot be decided on the district court record because it requires additional evidence need not be brought on direct appeal and may be brought in a postconviction petition.' " *State v. Martin*, 695 N.W.2d 578, 588 (Minn.2005) (quoting *Torres v. State*, 688 N.W.2d 569, 572 (Minn.2004)), *abrogated on other grounds by State v. Her*, 750 N.W.2d 258, 265 n. 5 (Minn. 2008). Arredondo's claim does not fall within this exception.

Arredondo argues that the guilty verdicts on the first-degree felony murder and second-degree intentional murder charges are inconsistent with the guilty verdict on the first-degree misdemeanor manslaughter charge. According to the statutes in effect at the relevant time, a person is guilty of first-degree felony murder if that person "causes the death of [another] with intent to effect [that] death" and while committing or attempting to commit a felony. Minn.Stat. § 609.185(3) (1996). A person is guilty of second-degree intentional murder if that person causes the death of another intentionally, but without premeditation. Minn.Stat. § 609.19(1) (1994). And a person is guilty of first-degree misdemeanor manslaughter if that person "causes the death of another in committing or attempting to commit a misdemeanor or gross misdemeanor offense with such force and violence that death of or great bodily harm to any person was reasonably foreseeable." Minn. Stat. § 609.20(2) (1994).[5]

The postconviction court ruled that the verdicts were not inconsistent based on the rationale of the court of appeals in *State v. Barsness*, 473 N.W.2d 325, 328 (Minn.App. 1991), *rev. denied* (Minn. Aug. 29, 1991). In *Barsness*, the court considered whether a guilty verdict on a charge of second-

degree intentional murder was inconsistent with a guilty verdict on a charge of second-degree culpable negligence manslaughter. *Id.* at 327–28. The court concluded that the verdicts were not inconsistent. *Id.* at 328. The court noted that the crime of second-degree intentional murder did not require that the defendant act with the purpose or specific intent to cause death. *Id.* Rather, the element of intent was satisfied "if the defendant believed his act would result in death." *Id.* (citing Minn. Stat. §§ 609.19(1) (1990), 609.02, subd. 9(4) (2006)). Concluding that such a "mental state of 'belief' or 'knowledge' of the consequences" did "not conflict with the notion of recklessness," which is a mental state for culpable negligence manslaughter, the court held that the verdicts were not legally inconsistent. *Id.*

Arredondo argues that under *State v. Moore* (*Moore I*), 458 N.W.2d 90 (Minn. 1990), a guilty verdict of first-degree misdemeanor manslaughter is legally inconsistent with guilty verdicts of first-degree felony murder and second-degree intentional murder, because first-degree misdemeanor manslaughter is "a crime of negligence" whereas the others are "specific intent crimes." The defendant in *Moore I* was found guilty of first-degree premeditated murder, second-degree unintentional

5. The misdemeanor manslaughter statute provides: "Whoever ... (2) causes the death of another in committing or attempting to commit a misdemeanor or gross misdemeanor offense with such force and violence that death of or great bodily harm to any person was reasonably foreseeable, and murder in the first or second degree was not committed thereby" is guilty of first-degree misdemeanor manslaughter. Minn.Stat. § 609.20(2) (1994). The crimes of first- and second-degree murder therefore seem, by definition, to be inconsistent with the crime of misdemeanor manslaughter. But the jury was not instructed based on the language of the statute. At Arredondo's request, the jury was instructed as to the elements of misdemeanor man-

slaughter as set forth by the CRIMJIGs then in effect. *See* 10 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Criminal*, CRIMJIG 11.21, 11.22 (3d ed.1990). Those instructions did not contain the last clause of Minn.Stat. § 609.20(2) (1994), which is the clause that seems to make misdemeanor manslaughter inconsistent with first- and second-degree murder. Moreover, Arredondo does not argue on appeal that the language of the misdemeanor manslaughter statute makes the verdicts inconsistent. We therefore do not reach the issue of whether the language of the statute renders the verdicts inconsistent. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988).

murder, and second-degree culpable negligence manslaughter for the shooting death of his wife. *Id.* at 91. We held that the guilty verdicts of first-degree premeditated murder and second-degree culpable negligence manslaughter were legally inconsistent because we could not "reconcile the jury's findings that defendant caused the death of his wife with premeditation and intent and at the same time caused that death through negligence or reckless conduct." *Id.* at 94. *Moore I* does not compel the conclusion that the verdicts in this case are legally inconsistent. As the court of appeals noted in *Barsness, Moore I* reflected the "considerable difference" between premeditation and intent. 473 N.W.2d at 328. This case does not involve that difference because the jury here found Arredondo not guilty of first-degree premeditated murder.

Moreover, the guilty verdicts at issue in this case involve the belief that death would result and the foreseeability of that result, not the mental states of premeditation and negligence, which we found to be contradictory in *Moore I.*[6] In *Barsness*, the court of appeals concluded that intent and culpable negligence are not legally inconsistent because "[t]he risk created by culpably negligent conduct remains a 'risk,' not a certainty, of causing death, just as a 'belief' that death will result falls short of absolute certainty." 473 N.W.2d at 328.

Moreover, in *Cole*, we concluded that "the terms 'recklessness' and 'intent' are not mutually exclusive." 542 N.W.2d at 51. Based on this precedent, we conclude that a reasonable attorney could have decided that the requirements of intent and reasonable foreseeability are not mutually exclusive, and that Arredondo's claim that the verdicts in this case were legally inconsistent therefore would not have prevailed. Accordingly, we hold that Arredondo did not receive ineffective assistance of appellate counsel and that the postconviction court did not err by denying relief as to this claim.

## II.

We next consider Arredondo's claim that hearsay statements by Julio Rodriguez, one of the State's witnesses, were erroneously admitted at trial to prove the element of intent, and that trial and appellate counsel rendered ineffective assistance by failing to pursue the error. Trial counsel did not object to the introduction of these statements at trial. On review, the postconviction court determined that the statements were admissible because "[t]he record as a whole indicates that the prosecution was surprised when Rodriguez testified in a manner inconsistent with his prior statement on certain points," and that the statements were used to refresh Rodriguez's recollection. The court alternatively ruled that the statements were

---

6. The jury in this case was instructed that the State had to prove that Arredondo acted with intent to kill for both first-degree felony murder and second-degree intentional murder. The jury was also instructed that "[i]n order to find [that the] defendant had an intent to kill, you must find [that the] defendant acted with the purpose of causing death or believed that the act would have that result." Thus, under the instructions given in this case, the jury could have found Arredondo guilty of first-degree felony murder and second-degree intentional murder, even if it concluded that Arredondo did not act with the purpose of causing death, if it concluded that he believed that death would result from his actions. For misdemeanor manslaughter, the jury was instructed that the State had to prove that Arredondo "cause[d] the death of another in committing ... a misdemeanor ... offense[—in this case, assault—] with such force and violence that the death of or great bodily harm to any person was reasonably foreseeable." The jury was thus instructed to determine whether the State had proven that the victim's death was reasonably foreseeable from Arredondo's use of force and violence.

admissible under the residual exception to the hearsay rule.

■ Because this evidentiary issue was apparent from the trial record, Arredondo knew or should have known of it at the time of his direct appeal; the claim and related ineffective assistance of trial counsel complaint therefore are *Knaffla*-barred. *See Leake*, 737 N.W.2d at 536; *Black*, 560 N.W.2d at 85. But Arredondo's ineffective assistance of appellate counsel claim remains, and this claim requires that we examine the merits of the evidentiary issue to determine whether appellate counsel could have legitimately concluded that the claim would not prevail. *See Cooper*, 745 N.W.2d at 193; *Leake*, 737 N.W.2d at 536.

■ Arredondo's claim is based on the State's direct examination of Rodriquez where the State asked Rodriguez four separate times to review portions of the transcript of a statement he made to Bureau of Criminal Apprehension (BCA) agents in Eagle Pass, Texas, and then to testify from that transcript.[7] Portions of the transcript were either read into the record or confirmed by Rodriquez, but the transcript of the interview itself was not offered or received into evidence. Arredondo challenges the admission of those portions of Rodriguez's testimony as hearsay. Counsel for Arredondo did not object to the introduction of this testimony.

■ Because trial counsel did not object, Arredondo's appellate counsel would have had to demonstrate that the admission of this evidence should be re-

viewed for plain error. Minn. R.Crim. P. 31.02. Plain error requires (1) error (2) that is plain, and (3) the error must affect the defendant's substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). In order for plain error to exist, " 'the trial error must have been so clear under applicable law at the time of conviction, and so prejudicial to the defendant's right to a fair trial, that the defendant's failure to object—and thereby present the trial court with an opportunity to avoid prejudice—should not forfeit his right to a remedy.' " *State v. Pilot*, 595 N.W.2d 511, 518 (Minn.1999) (quoting *Rairdon v. State*, 557 N.W.2d 318, 323 (Minn.1996)). If the three *Griller* prongs are met, we "then assess[ ] whether [we] should address the error to ensure fairness and the integrity of the judicial proceedings." *Griller*, 583 N.W.2d at 740.

■ Under the first two *Griller* prongs, we examine whether the testimony was admitted in error and whether the error was plain (i.e., contrary to " 'case law, a rule, or a standard of conduct' "). *State v. Simion*, 745 N.W.2d 830, 843 (Minn.2008) (quoting *State v. Ramey*, 721 N.W.2d 294, 302 (Minn.2006)). Arredondo argues that it was an error to admit Rodriguez's testimony because it was hearsay. Hearsay is defined "as an out-of-court statement offered as evidence to prove the truth of the matter asserted." *State v. Manthey*, 711 N.W.2d 498, 504 (Minn.2006) (citing Minn. R. Evid. 801(c)). The rules of evidence "bar the admission of hearsay unless it fits under one of a number of exceptions, which generally reflect the rec-

---

7. Before asking Rodriguez to review the transcript for the first time, the State asked whether Rodriguez remembered giving the statement. Rodriguez responded, "Yeah. That was six months ago. How can I remember every single thing?" The State had Rodriquez testify about four statements he made to law enforcement that were reflected in the

transcript wherein Rodriquez reported that Arredondo: (1) wanted to move the victim's body "out of sight"; (2) said the victim was "hard to die"; (3) threatened to physically harm Rodriguez if he "talk[ed]" about the killing; and (4) said during the bus ride from Minnesota to Texas, "If you can't do the time, don't do the crime."

ognized reliability of statements made in certain situations." *Id.* (citing Minn. R. Evid. 802, 803, 804).

Arredondo focuses his argument on the exception for recorded recollections set forth in Minnesota Rule of Evidence 803(5), and argues that Rodriguez's testimony did not satisfy this exception. But we have held that excerpts from witnesses' prior statements to police are properly admitted as recorded recollections. *See State v. Zeimet,* 348 N.W.2d 338, 341 (Minn.1984) (holding that witnesses' prior statements to police were admissible as recorded recollections where the "witnesses gave their prior statements when they had personal knowledge of defendant's admissions; the statements were contemporaneously and accurately recorded; both witnesses lacked sufficient present recollection ... to testify fully and accurately about the subject matter; and both witnesses testified that they were being truthful when they made the statements that were recorded"). Separate from this exception, the record indicates that the State used some portions of the transcript in an effort to refresh Rodriquez's recollection. *See* Minn. R. Evid. 612. We have recognized that the district court "has wide discretion in permitting use of [written material] to refresh a witness's memory and in the references that may be made thereto." *State v. Bauer,* 598 N.W.2d 352, 368 (Minn.1999) (internal alteration and quotation omitted). Finally, as the postconviction court noted, this testimony could also have properly been admitted under the residual exception to the hearsay rule, Minn. R. Evid. 807. *See State v. Ortlepp,* 363 N.W.2d 39, 44 (Minn.1985) (discussing requirements for admission of evidence under residual exception).

On the basis of these exceptions to the hearsay rule and the discretion afforded district courts on evidentiary matters, Ar-redondo's appellate counsel could have legitimately concluded that Arredondo could not demonstrate that his claim should be reviewed under the plain error doctrine and that his hearsay claim as to the four portions of Rodriguez's testimony would not prevail. We therefore hold that Arredondo's ineffective assistance of appellate counsel claim is without merit and that the postconviction court did not err by denying relief as to this claim.

## III.

■ We next consider Arredondo's claim that he was denied his right to consular assistance under Article 36 of the Vienna Convention on Consular Relations (VCCR), and that his trial and appellate counsel rendered ineffective assistance by failing to pursue the error. Because Arredondo's VCCR claim was knowable at the time of his direct appeal, and can be decided on the basis of the trial court record, it is *Knaffla*-barred. *See Maharaj v. State,* 778 So.2d 944, 959 (Fla.2000) (holding that a claim under the VCCR was procedurally barred where it was not raised on direct appeal); *Rummer v. State,* 722 N.W.2d 528, 535–36 (N.D.2006) (same). The same is true for his claim of ineffective assistance of trial counsel related to this issue. But Arredondo's ineffective assistance of appellate counsel claim remains, and we therefore proceed to examine the merits of his VCCR claim in order to determine whether appellate counsel could have legitimately concluded that the claim would not prevail. *See Cooper,* 745 N.W.2d at 193; *Leake,* 737 N.W.2d at 536.

■ *Article 36 of the VCCR provides* that upon arrest a foreign national has the right to contact the consular post of his home country, and that the arresting authorities must inform the detainee of that right. Vienna Convention on Consular Relations art. 36, para. 1(b), Apr. 24, 1963, 21

U.S.T. 77, U.N.T.S. 261; *see Ademodi v. State,* 616 N.W.2d 716, 718 (Minn.2000).[8] It is unsettled whether the VCCR "gives rise to any individually enforceable rights." *United States v. Cazares,* 60 Fed.Appx. 223, 226 (10th Cir.2003). The U.S. Supreme Court has not definitively decided the issue, but has stated that the VCCR "arguably confers on an individual the right to consular assistance following arrest." *Breard v. Greene,* 523 U.S. 371, 376, 118 S.Ct. 1352, 140 L.Ed.2d 529 (1998). In 2006 the Court again left open the question of whether the VCCR "grants individuals enforceable rights," assuming without deciding that Article 36 granted the petitioners such rights. *Sanchez–Llamas v. Oregon,* 548 U.S. 331, ——, 126 S.Ct. 2669, 2677–78, 165 L.Ed.2d 557 (2006). In *Sanchez–Llamas,* the Court held "that a State may apply its regular rules of procedural default to Article 36 claims." 126 S.Ct. at 2674.

Even if we were to assume—as the Supreme Court did in *Breard,* 523 U.S. at 376, 118 S.Ct. 1352, and *Sanchez–Llamas,* 126 S.Ct. at 2677–78—that the VCCR creates an individual, judicially enforceable right, Arredondo must establish prejudice from the alleged violation of the VCCR in order to prevail. *See Breard,* 523 U.S. at 377, 118 S.Ct. 1352 (stating that even if the VCCR claim was "properly raised and proven, it is extremely doubtful that the violation should result in the overturning of a final judgment of conviction without some showing that the violation had an effect on the trial." (citing *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991))); *see also Medellin v. Dretke,* 544 U.S. 660, 665 n. 3, 125 S.Ct. 2088, 161 L.Ed.2d 982 (2005) (explaining that in *Breard* the Court had noted "that a successful Vienna Convention claimant must demonstrate prejudice").

Arredondo cites *United States v. Villa-Fabela,* 882 F.2d 434 (9th Cir.1989), *overruled in part by United States v. Proa-Tovar,* 975 F.2d 592, 595 (9th Cir.1992), and *United States v. Rangel–Gonzales,* 617 F.2d 529 (9th Cir.1980), in support of his claim that prejudice should be presumed upon a showing that: he was not advised of his rights under the VCCR; if he had known, he would have availed himself of the right to consult the Mexican consulate; and if consulted, the consulate would have assisted him. But we typically do not presume prejudice from trial errors. *See, e.g., State v. Sanders,* 376 N.W.2d 196, 204 (Minn.1985) ("Ordinarily, a convicted criminal defendant who seeks a new trial because of alleged trial error bears the burden of convincing the appellate court not only that error occurred but that it was prejudicial."). Based on our rule, Arredondo's appellate counsel could have rea-

---

**8.** We have been presented with a VCCR violation issue on only one occasion. *See Ademodi,* 616 N.W.2d 716. In that postconviction case, appellant sought to have his conviction vacated on the basis that he was entitled to consular notification under Article 36 of the VCCR. *Id.* at 717. The district court vacated the conviction, finding that appellant had been prejudiced by the State's failure to inform him of his right to consular assistance. *Id.* The court of appeals reversed, "holding that, assuming the Vienna Convention does create individual rights, a showing of prejudice must be made in order for a court to impose a remedy." *Id.* Just like Arredondo,

Ademodi failed to raise a VCCR violation claim on direct appeal. *Id.* at 718. We concluded that Ademodi waived his VCCR claim, and explained that it was "knowable because it had a reasonable basis in the law at the time of his appeal." *Id.* at 719. We then considered whether fundamental fairness required a substantive review of the argument, but determined that no review was required because Ademodi "fail[ed] to articulate the particular facts of the case supporting his claim" and made "only a bald allegation of unfairness." *Id.* We did not directly address in *Ademodi* whether the VCCR creates an individual, judicially enforceable right.

sonably concluded that Arredondo would have had to show prejudice from a violation of the VCCR in order for the claim to have merit.

With respect to prejudice, Arredondo's claim, in essence, is that he did not understand English well enough and that with the help of the Mexican consulate he would have been better able to defend himself.[9] The postconviction court determined that Arredondo "offered no facts in the petition that explain what *material* evidence he would intend to submit at an evidentiary hearing," including "any specific advice that the [consul] would have given which would have had some impact on specific aspects of the case." The postconviction court further rejected Arredondo's claim that, because English was his second language, he needed assistance from the consul in order to fully understand the proceedings.

As the postconviction court found, the trial record indicates that Arredondo was questioned about his ability to communicate in English during his police interview with BCA agents, and he stated that he was able to communicate. The record also reveals that the agents offered Arredondo an interpreter, which he refused. Arredondo also testified at trial that he is able to read and write English, and that he was educated from first through ninth grades at an English-speaking school in Texas. Additionally, an interpreter was available during trial, and Arredondo participated in the trial and gave responses to questions. He never indicated that he did not understand the proceedings. We have carefully reviewed the trial record and conclude that it supports the postconviction court's findings.

Based on the state of the law, appellate counsel reasonably could have determined that any possible violation of the notice provision of the VCCR would require a demonstration of prejudice. Based on the trial record, counsel could also have reasonably determined that Arredondo would not be able to show prejudice from lack of invocation of the VCCR. We therefore hold that Arredondo's ineffective assistance of appellate counsel claim is without merit and that the postconviction court did not err when it denied relief as to this claim.

Affirmed.

MAGNUSON, C.J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

9. In his memorandum in support of his petition for postconviction relief, Arredondo requested an evidentiary hearing to demonstrate that with advice from the Mexican consulate, "he would have gained a better understanding" of the proceedings and his rights. Specifically, Arredondo requested an evidentiary hearing to demonstrate:

(1) that he did not know of his right to consular assistance, (2) that he would have availed himself of the right had he known it, (3) that Mexican consular officials were never notified of [his] arrest and charges, (4) that the Mexican consulate would have provided him substantial assistance, (5) that at the time of the trial, he did not understand English well, and that he lacked a full understanding of the nature of the proceedings against him, and (6) that with the assistance of the Mexican consulate, he would have gained a better understanding of the charges and proceedings, he would have had a better understanding of his legal options, including his plea offer, and that he would have had the opportunity to seek an alternate counsel of his choice.