Jeremy JACKSON, petitioner,
Appellant,

v.

STATE of Minnesota, Respondent.

No. A11–2045.

Supreme Court of Minnesota.

Aug. 1, 2012.

Jeremy Jackson, Stillwater, MN, pro se.

Lori Swanson, Attorney General, Saint Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Lee W. Barry, Assistant County Attorney, Minneapolis, MN, for Respondent.

## OPINION

PAUL H. ANDERSON, Justice.

In December 2007 the Hennepin County District Court convicted Jeremy Jackson of (1) first-degree murder committed for the benefit of a gang for the shooting death of Gennaro Knox and (2) attempted first-degree murder committed for the benefit of a gang for the shooting of T.K. We affirmed Jackson's convictions on direct appeal. *State v. Jackson,* 770 N.W.2d 470 (Minn.2009). Jackson filed a petition for a writ of habeas corpus in the United States District Court for the District of Minnesota. That court denied Jackson's petition and dismissed the action with prejudice. *Jackson v. Symmes,* No. 09–CV–2946 (SRN/JSM), 2011 WL 1256617 (D.Minn. Apr. 4, 2011). Jackson then filed a petition for postconviction relief in Hennepin County District Court, claiming several violations of his right to counsel under the Sixth and Fourteenth Amendments to the United States Constitution. The postconviction court denied Jackson's petition without a hearing, and Jackson appeals to our court. We affirm.

On the evening of October 5, 2006, petitioner-appellant Jeremy Jackson and four acquaintances met to discuss the recent shooting of their mutual friend. *Jackson,* 770 N.W.2d at 473. The five men speculated about who might be responsible for this shooting, and eventually focused on three south Minneapolis street gangs: the "Bogus Boys," the "20s," and the "10s." *Id.* The five men then decided to go to the neighborhoods that two of these gangs treated as their territory in order to retaliate. *Id.* at 473–74. Jackson sat in the front passenger seat of an SUV as the men drove to the territory of the "Bogus Boys." *Id.* at 474. As the SUV drove by a bus stop, Jackson fired a gun through an open window toward a small group of people. One of these shots struck T.K., wounding but not killing her. *Id.* After fleeing the scene of this shooting, the SUV then traveled a short distance to the territory of the "20s" gang. *Id.* at 474–75. One of the five men saw two teenage boys whom he believed were "20s" or "10s," and Jackson fired at the two boys, striking and killing 16–year–old Gennaro Knox. *Id.* at 475. Jackson was arrested 2 days later. *See id.* at 477.

On January 4, 2007, a Hennepin County grand jury indicted Jackson on 12 counts, including six counts related to T.K.'s shooting and six counts related to Knox's

death.[1] On September 4, 2007, Jackson's first trial ended in a mistrial when the jury was unable to reach a unanimous verdict. *Id.* at 473. A second jury trial began on November 27, 2007. *Id.*

During the State's presentation of evidence at Jackson's second trial, several witnesses identified Jackson as a member of the "Bloods" street gang, also known as the "30s" or "Rolling 30s Bloods." *Id.* at 476. The State also introduced a substantial amount of additional evidence of Jackson's participation in a street gang, evidence intended to prove that Jackson committed the shootings for the benefit of a gang. *See id.* at 476, 481. The State introduced this evidence because crimes committed for the benefit of a gang are subject to enhanced penalties. *See* Minn. Stat. § 609.229 (2010). The jury found Jackson guilty of all 12 counts of the indictment, and the district court convicted Jackson of first-degree murder committed for the benefit of a gang, Minn.Stat. §§ 609.185(a)(1), 609.229 (2010), and attempted first-degree murder committed for the benefit of a gang, Minn.Stat. §§ 609.17, 609.185(a)(1), 609.229 (2010).

On direct appeal, Jackson raised—through appointed counsel—two primary claims.[2] First, Jackson argued that the State failed to provide complete discovery to Jackson's attorney and that this failure impaired Jackson's ability to impeach one of the State's witnesses, who was referred to as Dominique. Second, Jackson contended that some of the State's evidence presented at trial violated the Minnesota Rules of Evidence. Specifically, Jackson argued that the district court abused its discretion when it admitted several items of allegedly irrelevant and "unfairly prejudicial" evidence related to Jackson's participation in a street gang, which we will refer to as the "challenged gang-affiliation evidence."

We affirmed Jackson's convictions. *Jackson,* 770 N.W.2d at 473. In regard to the alleged discovery violation, we concluded that the alleged violation did not prejudice Jackson because there was "no reasonable probability that the outcome at trial would have been different if Jackson had been able to more completely impeach Dominique." *Id.* at 481. In regard to Jackson's evidentiary claim, we concluded that the district court acted within its discretion by admitting two of the items of challenged gang-affiliation evidence and

1. Jackson was indicted on the following 12 counts: (1) first-degree murder, Minn.Stat. § 609.185(a)(1) (2010); (2) first-degree murder committed for the benefit of a gang, Minn.Stat. §§ 609.185(a)(1), 609.229 (2010); (3) first-degree murder while committing a drive-by shooting, Minn.Stat. § 609.185(a)(3) (2010); (4) first-degree murder committed for the benefit of a gang while committing a drive-by shooting, Minn.Stat. §§ 609.185(a)(3), 609.229; (5) second-degree murder while committing a drive-by shooting, Minn.Stat. § 609.19, subd. 1(2) (2010); (6) second-degree murder committed for the benefit of a gang while committing a drive-by shooting, Minn.Stat. §§ 609.19, subd. 1(2) 609.229; (7) attempted murder, Minn.Stat. §§ 609.17, 609.185(a)(1) (2010); (8) attempted first-degree murder committed for the ben-

efit of a gang, Minn.Stat. §§ 609.17, 609.185(a)(1), 609.229; (9) attempted murder while committing a drive-by shooting, Minn. Stat. §§ 609.17, 609.185(a)(3); (10) attempted murder committed for the benefit of a gang while committing a drive-by shooting, Minn. Stat. §§ 609.17, 609.185(a)(3), 609.229; (11) drive-by shooting, Minn.Stat. § 609.66, subd. 1e(b) (2010); and (12) drive-by shooting committed for the benefit of a gang, Minn.Stat. §§ 609.66, subd. 1e(b), 609.229.

2. Jackson also submitted a supplemental pro se brief that raised four additional claims of error challenging, among other things, his indictment and the district court's admission of evidence at trial. We considered and rejected each of Jackson's pro se claims. *Jackson,* 770 N.W.2d at 484–86.

that any error caused by the admission of the other challenged gang-affiliation evidence did not substantially influence the jury's verdict. *Id.* at 482–84. In essence, we concluded that admission of the latter evidence was harmless.

In October 2009 Jackson filed a petition for a writ of habeas corpus in the United States District Court for the District of Minnesota. On the recommendation of the magistrate judge, *Jackson v. Symmes,* No. 09–2946 (SRN/JSM), 2011 WL 1300930 (D.Minn. Jan. 18, 2011), the court denied Jackson's petition and dismissed the action with prejudice, *Jackson,* 2011 WL 1256617, at *2. The court concluded in part that Jackson had failed to exhaust available state court remedies related to the challenged gang-affiliation evidence. *See Jackson,* 2011 WL 1300930, at *13. More specifically, Jackson's federal constitutional claims related to the gang-affiliation evidence were not exhausted because he had not presented those claims to our court for review. The court also concluded that our court's *Knaffla* rule would now procedurally bar Jackson from raising those claims. *See id.* at *14; *see also State v. Knaffla,* 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976) (stating that all claims raised by a defendant on direct appeal, and all claims which the defendant could have raised on direct appeal but did not, will not be considered in a review of a subsequent petition for postconviction relief by that defendant).

On July 13, 2011, Jackson filed a petition for postconviction relief in the Hennepin County District Court. The postconviction court denied Jackson's petition without a hearing, concluding that each of Jackson's claims was procedurally barred under the *Knaffla* rule or was meritless. Jackson subsequently appealed to our court.

■■■■ "When reviewing a denial of relief by a postconviction court, we review questions of law de novo." *Colbert v. State,* 811 N.W.2d 103, 104 (Minn.2012) (citation omitted). "Our review of factual findings is limited to determining whether there is sufficient evidence in the record to support the findings of the postconviction court." *Id.* at 104–05 (quoting *Rickert v. State,* 795 N.W.2d 236, 239 (Minn.2011)) (internal quotation marks omitted). A postconviction court is not required to hold an evidentiary hearing if the petitioner "fails to allege facts that are sufficient to entitle him or her to the relief requested." *Davis v. State,* 784 N.W.2d 387, 392 (Minn. 2010) (citation omitted).

■■■ Liberally construing Jackson's pro se postconviction petition and appellate brief, *see* Minn.Stat. § 590.03 (2010), we conclude that Jackson's appeal raises three issues. First, Jackson contends that his right to the effective assistance of appellate counsel was violated by his counsel's failure to argue that the district court erred by admitting the challenged gang-affiliation evidence. Second, Jackson contends that his right to the effective assistance of appellate counsel was violated by his counsel's failure to argue that the admission of the challenged gang-affiliation evidence violated Jackson's right to due process. Third, Jackson contends that his right to the effective assistance of appellate counsel was violated by his counsel's failure to preserve any federal constitutional claims for federal habeas review.[3]

---

**3.** In his memorandum of law supporting his postconviction petition, Jackson also argued that he "shouldn't be bound by his appellate counsel's incompetence" because he was not given the opportunity to choose his own appellate counsel. Jackson does not address this claim in his brief to our court, and therefore it is waived. *See State v. Powers,* 654 N.W.2d 667, 676 (Minn.2003) ("Issues not addressed by a party's brief are considered

The United States and Minnesota constitutions guarantee a criminal defendant's right to effective assistance of appellate counsel. *See Deegan v. State,* 711 N.W.2d 89, 98 (Minn.2006); *Pierson v. State,* 637 N.W.2d 571, 579 (Minn.2002) (citing *Evitts v. Lucey,* 469 U.S. 387, 396, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985)). A postconviction petitioner claiming ineffective assistance of appellate counsel must satisfy the two-pronged test from *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), by showing that (1) his appellate counsel's representation "fell below an objective standard of reasonableness" (performance prong), and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (prejudice prong). *Arredondo v. State,* 754 N.W.2d 566, 571 (Minn.2008) (citations omitted) (internal quotation marks omitted). We may address the two prongs of the *Strickland* test in either order and may dispose of a claim on one prong without analyzing the other. *Schleicher v. State,* 718 N.W.2d 440, 447 (Minn.2006).

The first issue raised by Jackson is whether he received ineffective assistance of appellate counsel because his counsel failed to argue that the district court erred when it admitted the challenged gang-affiliation evidence. Jackson concedes that his appellate counsel argued that the admission of the challenged gang-affiliation evidence was unfairly prejudicial. But Jackson contends that his counsel failed to raise a distinct argument that the court erred in its evidentiary ruling regarding that evidence. In essence, Jackson asserts that a claim that the challenged gang-affiliation evidence was unfairly prejudicial, on the one hand, and a claim that the district court erred by admitting that evidence, on the other hand, are two separate and independent claims. Jackson also argues that his constitutional right to appellate counsel was violated because his appellate counsel did not present the latter claim.[4]

We need not decide whether Jackson is correct that these two claims are independent of each other because the record before us conclusively demonstrates that Jackson was not prejudiced by his counsel's failure to raise the claim that Jackson believes should have been raised. *See* Minn.Stat. § 590.04, subd. 1 (2010) (permitting the denial of a petition without an evidentiary hearing when "the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief"). In other words, we would have affirmed Jackson's conviction on direct appeal even if his counsel had specifically argued that the district court erred in its admission of the challenged gang-affiliation evidence. Jackson's assertions to the contrary are merely argumentative and conclusory, and lack factual or evidentiary support. *See Leake v. State,* 737 N.W.2d 531, 535 (Minn.2007). In particular, Jackson has not identified any

waived...."); *State v. Grecinger,* 569 N.W.2d 189, 193 n. 8 (Minn.1997) ("[I]ssues not argued in briefs are deemed waived on appeal.").

4. The postconviction court held that Jackson's claim was barred by the *Knaffla* rule, 309 Minn. at 252, 243 N.W.2d at 741, because Jackson had already challenged the admission of the gang-affiliation evidence on direct appeal. The *Knaffla* rule, however, does not generally bar claims of ineffective assistance of appellate counsel in a first postconviction petition. *See Leake v. State,* 737 N.W.2d 531, 536 (Minn.2007). Here, because Jackson's postconviction petition asserts that his right to appellate counsel was denied because his counsel failed to raise a specific argument, Jackson's claim is not procedurally barred by the *Knaffla* rule.

facts or evidence to cast doubt on our conclusions in his direct appeal that "any error in the admission of th[e] [challenged gang-affiliation] evidence was harmless," *Jackson,* 770 N.W.2d at 484, and did not "substantially influence[ ] the outcome of Jackson's trial," *id.* at 483. Therefore, we conclude that the postconviction court did not abuse its discretion in denying the petition without an evidentiary hearing on the issue.

■ The second issue raised by Jackson is whether he received ineffective assistance of appellate counsel because his counsel failed to argue that the admission of the challenged gang-affiliation evidence violated Jackson's due process rights. Once again, Jackson concedes that his appellate counsel argued that the admission of the challenged gang-affiliation evidence was unfairly prejudicial under the Minnesota Rules of Evidence. But Jackson asserts that his counsel was ineffective because she failed to raise an additional argument that the admission of that evidence violated Jackson's right to due process. Under our law, a defendant may be entitled to a reversal of his conviction and a new trial if the improper admission of evidence at trial "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Chomnarith,* 654 N.W.2d 660, 666 (Minn.2003) (citation omitted); *see also State v. Richards,* 495 N.W.2d 187, 191 (Minn.1992) ("[E]very criminal defendant has the right to be treated with fundamental fairness . . . ." (citing U.S. Const. amend. XIV; Minn. Const. art. I, § 7)).

■ Here, Jackson has again failed to demonstrate how the outcome of his direct appeal would have been different if his counsel had argued that the admission of the challenged gang-affiliation evidence constituted a violation of due process. The

four items of challenged evidence represent only a small part of the State's overwhelming evidence of Jackson's guilt and gang participation. Our review of the trial record also indicates that it is unlikely that the jury relied heavily on these four items of evidence. Indeed, we concluded in Jackson's direct appeal that the State had presented a "cascade of evidence" showing that Jackson's crimes were committed for the benefit of a gang. *Jackson,* 770 N.W.2d at 483. Further, the district court provided a limiting instruction directing the jury to use the allegedly prejudicial evidence only for a permissible purpose— to determine whether Jackson committed the charged offenses for the benefit of a gang. In short, the record before us once again conclusively demonstrates that there is no reasonable probability that the outcome of Jackson's appeal would have been different if his appellate counsel had argued that the State's use of the challenged gang-affiliation evidence violated Jackson's right to due process. *See* Minn.Stat. § 590.04. Therefore, we conclude that the postconviction court correctly denied Jackson's petition without an evidentiary hearing on the issue.

■ The final issue before us is whether Jackson received ineffective assistance of appellate counsel because his counsel failed to raise any federal constitutional challenges to his convictions. Jackson specifically argues in his brief that his appellate counsel "waived [all] of his federal rights under the federal constitution by not preserving them" on appeal. We understand the essence of Jackson's argument to be that his appellate counsel was ineffective because she failed to preserve any federal constitutional claims for federal habeas review. We conclude that this argument is meritless.

Although the United States District Court denied several of the claims in Jackson's habeas petition as nonexhausted and procedurally defaulted, our court has never held, and we find no authority holding, that appellate counsel is under a duty to raise federal constitutional claims in a state-court appeal simply to preserve those issues for federal habeas review. To the contrary, we have repeatedly said that "appellate counsel does not have a duty to include all possible claims on direct appeal, but rather is permitted to argue only the most meritorious claims." *Nunn v. State,* 753 N.W.2d 657, 661 (Minn.2008) (brackets eliminated) (quoting *Schneider v. State,* 725 N.W.2d 516, 523 (Minn.2007)); *see also Jones v. Barnes,* 463 U.S. 745, 754, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) (concluding that requiring appellate counsel "to raise every 'colorable' claim ... would disserve the very goal of vigorous and effective advocacy").

Moreover, a petitioner arguing ineffective assistance of appellate counsel must identify a specific claim that his counsel unreasonably failed to raise and demonstrate that he was prejudiced by his counsel's failure to raise that claim. *See Malone v. Vasquez,* 138 F.3d 711, 720 (8th Cir.1998); *see also Wright v. State,* 765 N.W.2d 85, 91 (Minn.2009) (stating that appellate counsel "does not act unreasonably by not asserting claims that counsel could have legitimately concluded would not prevail" (citation omitted)). Other than the previously mentioned due process claim, Jackson fails to identify in his petition or brief any specific federal constitutional claim that his appellate counsel unreasonably failed to raise on direct appeal. Therefore, we conclude that the postconviction court did not abuse its discretion in denying this claim without an evidentiary hearing.

We hold that the petition, files, and records in this case conclusively show that Jackson is not entitled to postconviction relief on any of his claims of ineffective assistance of counsel. We therefore affirm the decision of the postconviction court.

Affirmed.