*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-1308**

State of Minnesota,
Respondent,

vs.

Joshua Rafael Harris,
Appellant.

**Filed June 15, 2026**
**Affirmed**
**Worke, Judge**

Ramsey County District Court
File Nos. 62-CR-23-3231, 62-CR-23-3239, 62-CR-24-2746

Keith Ellison, Attorney General, St. Paul, Minnesota; and

John Choi, Ramsey County Attorney, Anna R. Light, Assistant Ramsey County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Andrew J. Nelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Worke, Judge; and Jesson, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**WORKE**, Judge

Appellant challenges his convictions of identity theft and unlawful possession of a firearm, arguing that his attorney was ineffective because he failed to argue for a downward dispositional departure at sentencing. We affirm.

## FACTS

In June 2023, respondent State of Minnesota charged appellant Joshua Rafael Harris with felony identity theft and fifth-degree possession of a controlled substance. In a separate file, the state charged Harris with felony identity theft. And in April 2024, the state charged Harris with possession of a firearm by an ineligible person.

In September 2024, the district court held a plea hearing. Harris had filed a petition to represent himself. The district court appointed advisory counsel. To resolve the three files, Harris pleaded guilty to two counts of identity theft and possession of a firearm by an ineligible person. The state agreed to not object to Harris arguing for a downward dispositional departure. The parties also agreed to a downward durational departure on the identity-theft cases. The district court deferred accepting the guilty pleas and adjudicating guilt until sentencing.

As part of the plea, the district court authorized Harris's conditional release to inpatient treatment. Harris was required to: remain law-abiding, make all court appearances, comply with court orders, cooperate with a presentence investigation (PSI), abstain from nonprescribed drugs and alcohol, and comply with random testing. The

2

district court told Harris that he could lose the benefit of the plea agreement if he violated the conditions. Harris indicated that he understood.

Before sentencing, three noncompliance reports were filed, alleging that Harris violated the conditions of his release. At a hearing after the first report, the district court stated that the alleged violations demonstrated that Harris was likely not amenable to treatment. The district court reinstated Harris's conditional release and told him, "This is your opportunity to prove to me that you don't need to go to prison." At a hearing after the second report, the district court appointed Harris a public defender to represent him on the alleged violations.

Prior to sentencing, Harris's advisory counsel had filed a motion requesting a downward dispositional departure. He argued that Harris was entitled to a dispositional departure because Harris was young, motivated to get better, had the support of an aunt, had accepted responsibility, was respectful in court, cooperated with the PSI, and had been accepted into treatment.

Harris failed to appear for sentencing in January 2025. The district court held a sentencing hearing on May 16, 2025. A PSI showed that the presumptive sentence was 78 months in prison for the first identity-theft offense, 88 months in prison for the second identity-theft offense, and 60 months in prison for the firearm offense. The prosecutor stated that, although Harris "violated th[e] [plea] agreement by not cooperating with treatment multiple times," he still intended to "honor the agreement" and requested "60-month sentences concurrent on the three files." Harris's public defender stated:

> The [s]tate has forgiven opportunities that they could easily have aggravated that sentence. It would have been especially easy with an identity theft because of the very severe penalties you have for what appears to be very, very minimal evidence; but nevertheless, the [s]tate is simply asking for 60 months.
>
> . . . .
>
> [The state] would be in their right to ask for more, but they're not doing it. . . . [T]hat is exactly the sentence that was negotiated, and that should be imposed. 60 months.

Harris stated that, as part of the plea agreement, he could request a dispositional departure, which "wasn't gonna be contested by the [s]tate as long as everything went along fine." The district court replied: "Everything did not go fine. . . . [You entered] a conditional plea. . . . [I]f you held up your end of the bargain . . . then the [s]tate w[ould] not oppose a dispositional departure. You didn't hold up your end of the bargain."

Harris argued that he had done "a pretty good job." The district court stated, "[T]here has not been a showing that you are particularly amenable. I can tell you that I came in here today prepared to send you to prison for longer than the [s]tate is asking me to send you to prison for because the 60 months on the two identity theft cases is a durational departure." The district court stated that it intended to sentence Harris in accordance with the agreement and told Harris, "You should know that it could have been worse than that." The district court accepted the guilty pleas and adjudicated Harris guilty of the offenses. The district court sentenced Harris to three concurrent sentences of 60 months in prison, which were downward durational departures for the identity-theft convictions.

This appeal followed.

4

**DECISION**

Harris argues that his public defender was ineffective for failing to argue for a downward dispositional departure. Harris did not raise this claim in a postconviction petition. An ineffective-assistance-of-counsel claim is properly raised in a postconviction proceeding and not on direct appeal because, without the postconviction proceeding, the record may not be adequately developed to allow proper review. *Scruggs v. State*, 484 N.W.2d 21, 25 (Minn. 1992). But if no further facts need to be developed, the ineffective-assistance-of-counsel claim should be raised on direct appeal. *See Robledo-Kinney v. State*, 637 N.W.2d 581, 585-86 (Minn. 2002).

While the record does not include the public defender's reason for not arguing for a dispositional departure, it shows that Harris's guilty plea was a conditional plea, and because Harris failed to abide by the conditions, a dispositional departure was not guaranteed to him. The record is adequate to review Harris's ineffective-assistance-of-counsel claim.

Claims of ineffective assistance of counsel involve mixed questions of law and fact, which appellate courts review de novo. *State v. Rhodes*, 657 N.W.2d 823, 842 (Minn. 2003).

An ineffective-assistance-of-counsel claim is an alleged violation of the constitutional right to the reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 684-85 (1984). We analyze an ineffective-assistance-of-counsel claim under the two-prong test set forth in *Strickland*. *State v. Lahue*, 585 N.W.2d 785, 789 (Minn. 1998). To prevail, an appellant must demonstrate that counsel's

performance "fell below an objective standard of reasonableness, and that a reasonable probability exists that the outcome would have been different but for counsel's errors." *Id.* We may address the prongs in either order, and may dispose of a claim on one prong without analyzing the other. *Jackson v. State*, 817 N.W.2d 717, 722 (Minn. 2012).

Here, Harris's claim fails on the second prong because the record shows that there is not a reasonable probability that the outcome would have been different if Harris's attorney had argued for a dispositional departure.

The district court was familiar with the case, and Harris appeared before the district court several times before sentencing. The district court was aware of all of the allegations of Harris's noncompliance with his conditions of release. The district court was also aware of the filing by Harris's advisory counsel arguing for a dispositional departure.

At sentencing, Harris argued that he should be permitted to argue for a dispositional departure because the state agreed to not oppose that request "as long as everything went along fine." The district court replied: "Everything did not go fine," and explained that Harris's plea was conditioned on Harris holding up his end of the bargain. The district court stated: "You didn't hold up your end of the bargain."

After Harris argued that he had been doing "a pretty good job" because he was in contact with treatment and dropping off clean samples, the district court stated that Harris had been given several opportunities to demonstrate that he was amenable to probation and "every time . . . [Harris] ended up back in custody." The district court told Harris: "[G]iven your track record . . . there has not been a showing that you are particularly amenable." The district court also told Harris that it would still depart durationally, even though the

6

district court had planned "to send [him] to prison for longer than the [s]tate is asking." The district court stated: "You should know that it could have been worse."

Because the record shows that the result would not have been different, Harris failed to establish his ineffective-assistance-of-counsel claim.

**Affirmed.**