STATE OF MINNESOTA

IN SUPREME COURT

A12-0993

Court of Appeals                                                            Dietzen, J.
                                                                  Concurring, Stras, J.

State of Minnesota,

              Respondent,

vs.                                                            Filed:  October 22, 2014
                                                          Office of Appellate Courts

Dylan Micheal Kelley,

              Appellant.

_____

Lori Swanson, Attorney General, James B. Early, Assistant Attorney General, Saint Paul, Minnesota; and

Philip K. Miller, Benton County Attorney, Foley, Minnesota, for respondent.

Bradford Colbert, Legal Assistance to Minnesota Prisoners, Saint Paul, Minnesota, for appellant.

_____

S Y L L A B U S

1.      Under the plain-error doctrine, the law in existence at the time of appellate review, not the law in existence at the time of the district court's error, is applied to determine whether an error is plain.

2.      The instruction given to the jury by the district court on accomplice liability was plainly erroneous at the time of appellate review.

1

3.     The plainly erroneous jury instruction did not affect appellant's substantial rights; therefore, appellant is not entitled to a new trial.

Affirmed as modified.

O P I N I O N

DIETZEN, Justice.

Appellant Dylan Micheal Kelley was found guilty by a Benton County jury and convicted as an accomplice to first-degree aggravated robbery and third-degree assault.[1] Kelley appealed his first-degree aggravated robbery conviction to the court of appeals, requesting a new trial based on an unobjected-to jury instruction on accomplice liability. He claimed the court of appeals could grant the requested relief under Minn. R. Crim. P. 31.02 because the jury instruction plainly violated the newly announced rule in *State v. Milton*, 821 N.W.2d 789 (Minn. 2012).[2]  The court of appeals affirmed Kelley's conviction, concluding the accomplice liability instruction given was error, but that he was not entitled to relief under Rule 31.02 because the law was unsettled at the time of the error and did not become settled in favor of Kelley until the time of appeal.  We conclude Rule 31.02 is not limited to errors that were plain at the time of trial.  Instead, it

---

[1]     Kelley is challenging only his first-degree aggravated robbery conviction.

[2]     Kelley did object at trial to the court giving the accomplice liability jury instruction, but not on the ground that the instruction failed to explain the "intentionally aiding" element of accomplice liability.  Kelley therefore concedes that the plain-error rule, rather than the harmless-error rule, is appropriate. *See* Minn. R. Crim. P. 26.03, subd. 19(4)(b) (stating that a party's objection to jury instructions "must state specific grounds").

2

includes errors that are based on law, which although unsettled at the time of the error, was settled in favor of the defendant at the time of appellate review.[3] Nevertheless, because the error alleged in this case did not affect Kelley's substantial rights, we affirm as modified.

The victim, S.A., told police at a St. Cloud hospital that he was assaulted and robbed by two men in the early morning hours of January 4, 2011. The police investigated the case, and S.A. identified Kelley as one of his attackers. Kelley was arrested and charged with first-degree aggravated robbery in violation of Minn. Stat. § 609.245, subd. 1 (2012), and third-degree assault in violation of Minn. Stat. § 609.223, subd. 1 (2012).

At trial, the State presented evidence that on January 3, 2011, S.A. went to the apartment of his friend, B.G., in St. Cloud. When S.A. arrived, B.G. was having a party and there were approximately twenty people at the apartment. At some point, S.A. told B.G. he was interested in getting some marijuana and was directed toward Dylan Kelley. S.A. approached Kelley, and Kelley told him he could buy some marijuana from a friend. S.A. drove Kelley to the friend's house, and Kelley purchased the marijuana and gave it to S.A. S.A. complained that it was an inadequate amount of marijuana, and Kelley responded that his friend would bring the rest to B.G.'s apartment.

---

[3]     Minnesota Rule of Criminal Procedure 31.02 applies to review by appeal and posttrial motion. Our subsequent use of the phrase "time of appellate review" in this opinion simply reflects the fact that this case is before us on direct appeal.

Kelley's friend arrived at B.G.'s apartment later that evening, and told S.A. that Kelley wanted to see him outside. S.A. agreed and approached Kelley, who was leaning into the window of a parked car. Kelley quickly turned around and hit S.A. in the face. Kelley's friend held S.A. from behind and Kelley repeatedly hit S.A. in the face. When S.A. fell to the ground, they both kicked him. After they kicked S.A. in the face and fractured five of his teeth, S.A. lost consciousness. Kelley and his friend stole S.A.'s cigarettes, lighter, cell phone, and car keys. Subsequently, S.A. regained consciousness and returned to the apartment and told those present what happened. S.A. later discovered that his wallet, which contained about $240, was missing from his car. S.A. was taken to the hospital that morning for treatment.

At the close of the evidence the State requested that the district court instruct the jury on accomplice liability. Kelley argued that the accomplice liability instruction should not be given because he was charged as a principal and was not charged with aiding and abetting. Kelley further argued that the State had not offered any evidence regarding *who* committed the crime or *who* Kelley aided and abetted. The district court overruled Kelley's objection and the standard accomplice liability jury instruction was given to the jury.

The jury found Kelley guilty of both offenses. Subsequently, the district court entered judgment of conviction for first-degree aggravated robbery and third-degree assault and sentenced him to the presumptive sentence of 58 months.

The court of appeals affirmed, even though it concluded that the accomplice liability instruction given to the jury was legally erroneous because it failed to explain the

4

"intentionally aiding" element of accomplice liability as required by *State v. Milton*, 821 N.W.2d 789, 806 (Minn. 2012), which was decided after Kelley's conviction but before he filed his appellate brief. *State v. Kelley*, 832 N.W.2d 447, 451-52 (Minn. App. 2013). But the court further concluded the error was not plain because at the time of the trial, the obligation of the district court to explain the "intentionally aiding" element of accomplice liability was unsettled and did not become settled in favor of Kelley until the time of appeal. *Id.* at 456-57.

## I.

Kelley argues that the accomplice liability instruction given to the jury for the offense of first-degree aggravated robbery failed to accurately state the law. Kelley acknowledges that he did not object to the instruction on this specific basis, and therefore we review the instruction for plain error.

The three requirements that an appellant must satisfy under the plain-error doctrine were first articulated in *United States v. Olano*, 507 U.S. 725, 732 (1993), and later clarified in *Johnson v. United States*, 520 U.S. 461, 466-67 (1997). We adopted those requirements in *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). Under the plain-error doctrine, the appellant must show that there was (1) an error; (2) that is plain; and (3) the error must affect substantial rights. *Griller*, 583 N.W.2d at 740 (citing *Johnson*, 520 U.S. at 467). If the appellant satisfies the first three prongs of the plain-error doctrine, "we may correct the error only if it 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.' " *State v. Crowsbreast*, 629

5

N.W.2d 433, 437 (Minn. 2001) (quoting *Johnson*, 520 U.S. at 467); *accord Griller*, 583 N.W.2d at 740. We consider each prong of the plain-error doctrine in turn.

Under the plain-error doctrine, an "error" is a "[d]eviation from a legal rule [] unless the rule has been waived."[4] *Olano*, 507 U.S. at 732-33. In the context of jury instructions, a district court has broad discretion. *State v. Anderson*, 789 N.W.2d 227, 239 (Minn. 2010). But a district court abuses that discretion if its jury instructions confuse, mislead, or materially misstate the law. *State v. Vang*, 774 N.W.2d 566, 581 (Minn. 2009); *State v. Moore*, 699 N.W.2d 733, 736 (Minn. 2005). We review the jury instructions as a whole to determine whether the instructions accurately state the law in a manner that can be understood by the jury. *State v. Scruggs*, 822 N.W.2d 631, 642 (Minn. 2012).

Accomplice liability is defined by statute in Minn. Stat. § 609.05 (2012). The statute provides:

> Subdivision 1. Aiding, abetting; liability. A person is criminally liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime.

> Subd. 2. Expansive liability. A person liable under subdivision 1 is also liable for any other crime committed in pursuance of the intended crime if reasonably foreseeable by the person as a probable consequence of committing or attempting to commit the crime intended.

---

[4] In discussing the first prong of the plain-error rule, the United States Supreme Court has drawn an important distinction between forfeiture and waiver, explaining that "forfeiture" is "the failure to make a timely assertion of a right" whereas "waiver" is the "intentional relinquishment or abandonment of a known right." *Olano*, 507 U.S. at 733 (internal quotation marks omitted).

6

*Id.* The statute does not define the phrase "intentionally aids." The district court gave the standard accomplice liability jury instruction.[5]

In *State v. Milton*, the defendant argued for the first time on appeal that an instruction on accomplice liability was legally erroneous because the district court did not require the jury to find that he knowingly and intentionally aided another to commit the aggravated robbery. 821 N.W.2d 789, 805 (Minn. 2012). We explained that the law regarding such a requirement was unsettled because our previous discussions of "intentionally aiding" had been in the context of sufficiency-of-the-evidence claims, not the adequacy of jury instructions. *Id.* at 807. We concluded that an accomplice liability

---

[5]     The standard accomplice liability jury instruction states:

> The defendant is guilty of a crime committed by another person when the defendant has intentionally aided the other person in committing it, or has intentionally advised, hired, counseled, conspired with, or otherwise procured the other person to commit it.

> If the defendant intentionally aided another person in committing a crime, or intentionally advised, hired, counseled, conspired with, or otherwise procured the other person to commit it, the defendant is also guilty of any other crime the other person commits while trying to commit the intended crime, if that other crime was reasonably foreseeable to the defendant as a probable consequence of trying to commit the intended crime.

> The defendant is guilty of a crime, however, only if the other person commits a crime. The defendant is not liable criminally for aiding, advising, hiring, counseling, conspiring, or otherwise procuring the commission of a crime, unless some crime, including an attempt, is actually committed.

10 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Criminal*, CRIMJIG 4.01 (5th ed. 2006).

instruction must explain that the intentionally aiding element requires that the jury find beyond a reasonable doubt that the defendant knew his alleged accomplice was going to commit a crime and the defendant intended his presence or actions to further the commission of that crime. *Id.* at 808. We nevertheless affirmed Milton's conviction, explaining that he failed to establish an error that was plain. *Id.* at 807.

The instruction on accomplice liability in this case failed to explain the intentionally aiding element as required by *Milton*, and therefore was error. Indeed, the State concedes that Kelley has satisfied the first prong of the plain-error doctrine.

## II.

The crux of the dispute is whether the plainness of the error is examined at the time of the district court's error or at the time of appellate review. Kelley argues that plain error is determined at the time of appellate review and the State counters that plain error is determined at the time of the district court's error. For the reasons that follow, we conclude that plain error is determined at the time of appellate review.

## A.

In *State v. Baird*, we considered whether a defendant could satisfy the second prong of the plain-error doctrine by establishing the error was plain at the time of the appeal where the law was unsettled at trial but settled in favor of a defendant during the pendency of the appeal. 654 N.W.2d 105, 113 (Minn. 2002). Specifically, we considered whether the district court's unobjected-to jury instruction that Baird had a duty to retreat from his home before using self-defense against a co-resident constituted an error that was plain for the purposes of the plain-error doctrine. *Id.* We acknowledged

8

that at the time of Baird's trial, the law regarding the duty to retreat was *unsettled*. *Id.* at 109 n.2. While Baird's appeal was pending before the court of appeals, the law became settled in Baird's favor due to our decision in *State v. Glowacki*, 630 N.W.2d 392, 402 (Minn. 2001), which held that there is no duty to retreat from one's own home before using self-defense against a co-resident. *Baird*, 654 N.W.2d at 112.

We concluded in *Baird* that plain error is determined at the time of appellate review when the law was unsettled at the time of the error but settled in favor of the defendant during the pendency of the appeal. *Id*. at 113. We quoted directly from *Griller* stating that " '[t]o satisfy the second prong [of the plain-error doctrine] it is sufficient that the error is plain *at the time of the appeal*.' " *Id*. (quoting *Griller*, 583 N.W.2d at 741). We applied the plain-at-the-time-of-appeal rule announced in *Griller*, and held that "[b]ecause *Glowacki's* holding . . . rendere[d] the duty-to-retreat instruction given in error at Baird's trial clear and obvious, the error [was] plain." *Id.*

Our reliance in *Baird* on the plain-at-the-time-of-appeal rule announced in *Griller* was well-founded and reasonable.[6] Because we reversed the conviction based on plain error, our discussion of each prong of the plain-error doctrine was essential to our

---

[6]   Admittedly, the issue in *Griller* was not whether a defendant could establish that the error was plain at the time of the appeal where the law was *unsettled* at trial *but settled* in favor of a defendant during the pendency of the appeal. Instead, the issue in *Griller* was whether the defendant could satisfy the plainness requirement where the district court's jury instruction appeared to be a *correct statement* of the law at the time of trial but became an *incorrect statement* of the law during the pendency of appeal due to our intervening decision in *State v. Pendleton*, 567 N.W.2d 265 (Minn. 1997). *Griller*, 583 N.W.2d at 741.

9

decision, and therefore not dicta. *See Carlton v. State*, 816 N.W.2d 590, 614 (Minn. 2012) (explaining the statement in question was "dicta" because the resolution of the question was not necessary to our ultimate holding).

Our analysis in *Griller* relied upon *Johnson*, 520 U.S. 461, to explain plain error. We explained that

> [i]n *Johnson*, the [United States Supreme] Court considered whether the error was plain when at the time of trial the district court correctly stated the law, but later that same law became incorrect based on a case decided during the appeal. The Court concluded that to satisfy the second prong it is sufficient that the error is plain at the time of the appeal.

*Griller*, 583 N.W.2d at 741. We applied the *Johnson* analysis in *Griller*, concluding that "[u]nder *Pendleton*, which was released after Griller's conviction and while his case was on appeal, the defense-of-dwelling instruction given is now in error, and thus the error is plain." *Id.* In other words, the court in *Griller* concluded that the plain-at-the-time-of-appeal rule applies when a district court *correctly* states the law at the time of trial, but later that same law becomes *incorrect* based on a case decided during appeal.

The United States Supreme Court in *Henderson v. United States*, __ U.S. __, 133 S. Ct. 1121 (2013) recently reaffirmed the plain-at-the-time-of-appeal rule. In *Henderson*, the defendant appealed his sentence on the ground that the district court plainly erred in sentencing him to a prison term of 60 months, which was an upward durational departure, so that Henderson could participate in a prison drug rehabilitation program. *Id.* at __, 133 S. Ct. at 1125. At the time of the sentence, the circuits were split on whether the sentence was proper, and the circuit in which defendant was sentenced (the Fifth Circuit), had not ruled on the issue. *Id.* at __, 133 S. Ct. at 1125. While the

10

*Henderson* case was on appeal, the Supreme Court decided *Tapia v. United States*, 564

U.S. __, 131 S. Ct. 2382 (2011), concluding that a court errs when it imposes or

lengthens a prison sentence solely for rehabilitative purposes. *Henderson*, __ U.S. at __,

133 S. Ct. at 1125.

In a 6-3 decision, the *Henderson* Court extended *Johnson*, concluding that

regardless of whether the legal question was settled or unsettled at the time of trial, the

second prong of the plain-error doctrine is satisfied if the error is plain at the time of

appellate review. *Id.* at __, 133 S. Ct. at 1130-31. The Court reasoned that assessing the

error at the time of appellate review advances the general rule "that an appellate court

must apply the law in effect at the time it renders its decision."[7] *Id.* at __, 133 S. Ct. at

1126 (citing *Thorpe v. Hous. Auth. of Durham*, 393 U.S. 268, 281 (1969)). Moreover, the

plain-at-the-time-of-appeal approach is consistent with the purpose of the plain-error

doctrine, to provide a fairness-based exception to the forfeiture doctrine. *Id.* at __, 133

_____

[7]    We agree that the plain-at-the-time-of-appeal approach furthers the basic principle
that "an appellate court must apply the law in effect at the time it renders its decision."
*Henderson*, __ U.S. at __, 133 S. Ct. at 1129; *see also Interstate Power Co., Inc. v.
Nobles Cnty. Bd. of Comm'rs*, 617 N.W.2d 566, 575 (Minn. 2000) ("The general rule is
that appellate courts apply the law as it exists at the time they rule on a case, even if the
law has changed since a lower court ruled on the case."). The plain-at-the-time-of-appeal
approach is a bright-line temporal rule that is straightforward in its application. In
contrast, as the Court in *Henderson* explained, the plain-at-the-time-of-trial approach is
more cumbersome and complex and requires the court to "play a kind of temporal ping-
pong." *Id.* at __, 133 S. Ct. at 1128. Specifically, to determine "error" under the first
prong, we would examine the law in effect at the time of appellate review, but to
determine whether the error was "plain" under the second prong, we would examine the
law in effect at the time of the error. Further, we would examine the circumstances in
existence at the time of appellate review to determine whether the defendant has satisfied
the third and fourth prongs of the plain-error doctrine.

S. Ct. at 1127-28. Additionally, to distinguish and treat more harshly cases where the law was unsettled at trial but then settled in favor of a defendant during the pendency of the appeal (the *Henderson*-scenario), versus cases where the law was settled against the defendant at trial but then changed in the defendant's favor during the pendency of the appeal (the *Johnson*-scenario), "would simply promote arguments about *whether* the law of the circuit was unclear." *Id.* at __, 133 S. Ct. at 1128. Thus, the Court in *Henderson* determined that regardless of whether an error is made under settled or unsettled law, as long as the error is "plain" at the time of appellate review, it is "plain" for purposes of the plain-error doctrine. *Id.* at __, 133 S. Ct. at 1130-31.

In sum, we have previously determined that plain error is determined as of the time of appellate review in three circumstances. The first circumstance is when the settled law is the same at the time of trial and appellate review. *State v. Dobbins*, 725 N.W.2d 492, 513 (Minn. 2006); *see Olano*, 507 U.S. at 730-34. The second is when the law is settled at the time of trial and the settled law has been reversed as of the time of appellate review. *Griller*, 583 N.W.2d at 741; *see Johnson*, 520 U.S. at 464-67. The third is when the law is unsettled at the time of the district court's error and the law has become settled in the defendant's favor at the time of appellate review. *Baird*, 654 N.W.2d at 113; *see Henderson*, ___ U.S. at ___, 133 S. Ct. at 1128-31.

We conclude that for purposes of applying the plain-error doctrine the court examines the law in existence at the time of appellate review, not the law in existence at the time of the district court's error, to determine whether an error is plain. Our conclusion is supported by our decision in *Baird* and the U.S. Supreme Court's decision

in *Henderson*. Additionally, our conclusion simplifies the law by adopting a unified standard for the scenarios discussed in *Olano*, *Johnson*, and *Henderson*.

We next review whether the jury instruction given in this case was plainly erroneous. Kelley was convicted 8 months before we decided *Milton*, and therefore the district court's failure to comply with the *Milton* rule was not plain at the time of Kelley's conviction. Nevertheless, Kelley filed his brief in the court of appeals after *Milton* was decided, and therefore the district court's failure to comply with the *Milton* rule was plain at the time of appellate review. Because the failure to comply with the *Milton* rule was plain at the time of appellate review, Kelley has satisfied the second prong of the plain-error doctrine.

B.

The concurrence contends we should adopt a plain-at-the-time-of-trial rule on the grounds that it is most consistent with the purpose of the plain-error doctrine, that *Rairdon v. State*, 557 N.W.2d 318 (Minn. 1996), supports a conclusion that "we have never actually decided which rule—plain-at-the-time-of-trial or plain-at-the-time-of-appeal—controls under Rule 31.02," and that Milton and Kelley are similarly situated, and therefore giving Kelley the benefit of the *Milton* rule would be unfair. For the reasons that follow, we conclude that the arguments asserted by the concurrence lack merit. We will discuss each argument in turn.

The concurrence first alleges that the plain-at-the-time-of-trial rule is most consistent with the purpose of the plain-error doctrine, which the concurrence claims "provides an incentive for criminal defendants to object at trial by limiting the review of

13

unpreserved errors on appeal and making relief discretionary," "raises the bar for relief based on unpreserved errors," and "discourages the strategic withholding of objections in order to gain the proverbial 'second bite at the apple' on appeal." *Infra* at C-3, C-4. The concurrence's argument rests upon the mistaken premise that the plain-error doctrine serves the same purpose as the common-law forfeiture doctrine. The argument lacks merit.

The doctrines of forfeiture and plain error have different purposes and are guided by different principles. Under the forfeiture doctrine, " 'a constitutional right,' or a right of any other sort, 'may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.' " *Olano*, 507 U.S. at 731 (quoting *Yakus v. United States*, 321 U.S. 414, 444 (1944)); *see also State v. Williams*, 794 N.W.2d 867, 874 (Minn. 2011) (explaining that "[w]e ordinarily do not consider issues raised for the first time on appeal, even when those issues are constitutional questions of criminal procedure or are challenges to the constitutionality of a statute"); *State v. Goodloe*, 718 N.W.2d 413, 422 n.6 (Minn. 2006) (explaining that the term "forfeiture" most accurately described the effect of failing to bring an alleged error to the attention of the district court). The forfeiture doctrine reflects the "need to encourage all trial participants to seek a fair and accurate trial the first time around." *United States v. Young*, 470 U.S. 1, 15 (1985) (citation omitted) (internal quotation marks omitted); *accord State v. Ramey*, 721 N.W.2d 294, 299 (Minn. 2006). Put differently, the forfeiture doctrine encourages defendants to object while in the district court so that any errors can be corrected before their full impact is realized.

14

The plain-error doctrine serves a very different purpose: providing a means for appellate courts to remedy forfeited errors. The plain-error doctrine was first articulated by the United States Supreme Court in *Wiborg v. United States*, 163 U.S. 632 (1896). In *Wiborg*, the defendants failed to request "that the jury be instructed to find for [the] defendants." *Id.* at 658. The Court in *Wiborg* explained that although the jury instruction issue "was not properly raised [in the trial court], yet if a plain error was committed in a matter so absolutely vital to defendants, we feel ourselves at liberty to correct it." *Id.* The Court's holding in *Wiborg* was later memorialized in Fed. R. Crim. P. 52(b). *See* Fed. R. Crim. P. 52(b) advisory committee notes—1944. Federal Rule of Criminal Procedure 52(b) reads: "A plain error that affects substantial rights may be considered even though it was not brought to the court's attention." Fed. R. Crim. P. 52(b). The purpose of Rule 52(b) is "to enable the courts of appeals to review prejudicial errors so that any miscarriage of justice may be thwarted." *Young*, 470 U.S. at 15 n.12 (citation omitted) (internal quotation marks omitted). A serious miscarriage of justice occurs when the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 736 (citation omitted) (internal quotation marks omitted). Based on Fed. R. Crim. P. 52(b),[8] we promulgated Minn. R. Crim. P. 31.02, which provides that a "[p]lain error affecting a substantial right can be considered by the court on motion for new trial, posttrial motion, or on appeal even if it was not brought to the trial court's attention." Minn. R. Crim. P. 31.02.

---

[8] *See* Minn. R. Crim. P. 31 cmt.—1990 ("Rule 31.02 (Plain Error) comes from F[ed.] R. Crim. P. 52(b)").

The United States Supreme Court has observed, "The plain-error doctrine of Federal Rule of Criminal Procedure 52(b) tempers the blow of a rigid application of the contemporaneous-objection requirement." *Young*, 470 U.S. at 15 (*quoted in State v. Ramey*, 721 N.W.2d 294, 299 (Minn. 2006)). The Court in *Young* further explained that Rule 52(b) carefully balances the "need to encourage all trial participants to seek a fair and accurate trial the first time around against [the] insistence that obvious injustice be promptly redressed." *Young*, 470 U.S. at 15 (citation omitted) (internal quotation marks omitted). Later, in *Olano*, the Court emphasized the competing purposes of the forfeiture and plain-error doctrines and explained that because "[a] rigid and undeviating judicial[]" application of the forfeiture doctrine "would be out of harmony with . . . the rules of fundamental justice," Fed. R. Crim. P. 52(b) reflects an appellate court's "limited power to correct errors that were forfeited because not timely raised in district court." 507 U.S. at 731-32 (citation omitted) (internal quotation marks omitted).

In sum, it is well established that the forfeiture and plain-error doctrines are based on the competing purposes of encouraging timely objections at trial and providing appellate courts a means to remedy unobjected-to errors. The concurrence correctly points out that the plain-at-the-time-of-trial rule encourages timely objections at trial. But that argument is neither relevant nor material because the purpose of the plain-error doctrine is to provide a means for an appellate court to remedy unobjected-to errors.

Not only is the plain-at-the-time-of-appellate-review rule a better rule for allowing an appellate court to correct unobjected-to errors, but it also is more consistent with the United States Supreme Court's analysis of the second prong of the plain-error doctrine in

16

*Johnson*, 520 U.S. at 467. Our discussion of the *Johnson* Court's analysis of the second prong is informed by a brief review of the Court's decision in *Olano*, 507 U.S. 725. The alleged error in *Olano* was plain both at the time of trial *and* at the time of appellate review, and therefore the Court could have announced the rule proposed by the concurrence—the plainness prong is only satisfied when the error is plain at the time of trial *and* the time of appellate review. But the Court instead observed that it "need not consider the special case where the error was unclear at the time of trial but becomes clear on appeal because the applicable law has been clarified." *Id.* at 734. The Court ultimately held that an appellate court "cannot correct an error . . . unless the error is clear under *current law*." *Id.* (emphasis added).[9] Keeping in mind the analysis in *Olano*, we consider an important clarification to the plainness prong made by the United States Supreme Court in *Johnson.*

In *Johnson,* the Court considered for the first time a situation in which the law changed between the time of trial and appellate review. 520 U.S. at 464. The issue in *Johnson* was whether the district court committed plain error at the defendant's perjury trial when the court, rather than the jury, determined that the statement at issue was

---

[9] The rule announced in *Olano* was that where the law is *unsettled* both at the time of trial and the time of appellate review, an appellate court may not exercise its limited discretion to remedy unobjected-to errors under Rule 52(b). We have applied the *Olano* rule on several occasions. *See, e.g., State v. Jones*, 753 N.W.2d 677, 689 (Minn. 2008) (explaining that the unobjected-to prosecutorial misconduct was not "clear" or "obvious" where no court had "conclusively resolved" the issue in question); *State v. Crowsbreast,* 629 N.W.2d 433, 438 (Minn. 2001) (explaining that continuing doubt regarding the controlling law cut against the defendant's plain-error argument because it confirmed that the error was not plain).

"material." *Id.* At the time of trial, near unanimous precedent in the circuits held that the question of materiality was for the judge to decide, but before the case was appealed, the Supreme Court decided *United States v. Gaudin*, 515 U.S. 506 (1995), concluding that the question of materiality must be submitted to the jury. *Johnson*, 520 U.S. at 464, 468 n.1. The Court noted that "[i]n the case with which we are faced today, the error is certainly clear under '*current law*,' but it was by no means clear at the time of trial." *Id.* at 467 (emphasis added). Having clarified that an appellate court cannot correct an error unless the error is clear under the law at the time of appellate review, the Court considered the Government's argument that to satisfy the plainness prong, an error must be "plain" both at the time of trial and at the time of appellate review. *Id.* The Court acknowledged that such a rule would certainly encourage timely objections in the trial court but it questioned the usefulness of objections to rulings that were plainly supported by existing precedent. *Id.* at 467-68. The Court ultimately rejected the Government's argument, which demonstrates that an appellate court's power to address a manifest injustice is not limited to cases where a trial court should have recognized and sua sponte corrected an unobjected-to error. Indeed, the Court held "that in a case such as this—where the law at the time of trial was settled and clearly contrary to the law at the time of appeal—it is enough that an error be 'plain' at the time of appellate consideration." *Id*. at 468.

Because the Court's analysis in *Johnson* demonstrates that an appellate court's power to address a manifest injustice is not limited to cases where a trial court should have recognized and corrected the error without the parties' help, it substantially

18

undercuts the concurrence's arguments. The plain-at-the-time-of-trial rule is incompatible with *Johnson* because it limits an appellate court's power to address a manifest injustice to cases where the trial court should have recognized and sua sponte corrected an unobjected-to error.[10] In sum, the concurrence's argument that the plain-at-the-time-of-trial rule is more consistent with the purpose of the plain-error doctrine lacks merit because it mischaracterizes the purpose of the plain-error doctrine and ignores the United States Supreme Court's decision in *Johnson*, 520 U.S. 461.

Additionally, the concurrence relies upon language in *Rairdon*, 557 N.W.2d at 323, to allege that "we have never actually decided which rule—plain-at-the-time-of-trial

---

[10] Put differently, neither the defendant nor the district court were at fault for the trial error in *Johnson* because the district court was following existing precedent. Thus, assessing the error from the perspective of the district court in the *Johnson* scenario does not further the purpose of the plain-error doctrine to provide a fairness-based exception to the forfeiture doctrine. *See Olano*, 507 U.S. at 734 ("At a minimum, [an appellate court] cannot correct an error . . . unless the error is clear under current law."); *Young*, 470 U.S. at 15 (explaining that the purpose of the plain-error doctrine is to promptly redress obvious injustices); *United States v. Ross*, 77 F.3d 1525, 1539 (7th Cir. 1996) ("When viewed as a limitation on appellate court power to circumvent forfeiture where an error is debatable, rather than as a measure of district court fault, the 'plainness' inquiry must look to the error's certainty from the perspective of the appellate court."); *accord United States v. Farrell*, 672 F.3d 27, 36-37 (1st Cir. 2012). Moreover, adopting the rule proposed by the concurrence would effectively preclude an appellate court from ever remedying a manifest injustice when the law is unsettled at trial but settled in favor of the defendant by the time of appellate review because an error made under unsettled law is by definition not "plain." *See United States v. Smith*, 402 F.3d 1303, 1315 n.7 (11th Cir.) ("In practice, of course, this is the same as no plain error review at all, as error will never be 'plain' under 'unsettled' law."), *vacated on other grounds*, 545 U.S. 1125 (2005). Such a result is contrary to the principle articulated by the United States Supreme Court in *Wiborg* that an appellate court need not turn a blind eye to plain errors in matters that are critical to the defendant's right to a fair trial. 163 U.S. at 658.

or plain-at-the-time-of-appeal—controls under Rule 31.02." The argument is without merit because our statement in *Rairdon* was mere dicta.

In *Rairdon,* the defendant filed a petition for postconviction relief nine years after his conviction. 557 N.W.2d at 322. As part of his petition, he claimed the prosecutor committed plain error in closing argument. *Id.* at 322-23. Acknowledging that after Rairdon's trial our response to prosecutorial misconduct had grown "more stringent," we opined that Rairdon "may not reap any benefit from such decisions merely because he waited nine years to seek review." *Id.* at 323. It was in the context of discussing Rairdon's delay in seeking review that we said: "[T]he proper standard for overturning Rairdon's murder convictions is found in precedent existing at the time of his conviction." *Id.* Importantly, we did not decide in *Rairdon* whether the error was plain. Instead, we affirmed the district court's denial of postconviction relief based on the third prong of the plain-error doctrine, which requires a showing that the alleged error affected the defendant's substantial rights. *Id*. at 324-25. More specifically, we determined that although the prosecutor's statements "*may* have constituted misconduct at the time of Rairdon's conviction," "[a]ny improper conduct by the prosecutor . . . was not so prejudicial that the defendant was denied a fair trial." *Id.* at 324 (emphasis added). In summarizing our analysis, we emphasized that we had assumed that the error was plain and then addressed the third prong of the plain-error doctrine. More specifically we said that "even if Rairdon has identified misconduct plain enough to overcome his failure to object, such misconduct is insufficient to vacate Rairdon's murder convictions when viewed against all the evidence and in the context of the prosecutor's entire closing

20

statement." *Id.* at 325. Consequently, our statement that "the proper standard for overturning Rairdon's murder convictions is found in precedent existing at the time of his conviction" was dicta because it was not essential to our decision.[11] *See Carlton*, 816 N.W.2d at 614 (explaining the statement in question was "dicta" because the resolution of the question was not necessary to our ultimate holding); *Black's Law Dictionary* 485 (8th ed. 2004) (defining judicial dicta as "[a]n opinion by a court on a question that is directly involved, briefed, and argued by counsel, and even passed on by the court, but that is not essential to the decision").

It is true that we have cited *Rairdon* for the proposition that an alleged error must be plain at the time of conviction. *See, e.g., State v. Tscheu*, 758 N.W.2d 849, 863 (Minn. 2008) ("[F]or plain error to exist, the trial error must have been so clear under applicable law at the time of the conviction . . . .") (citation omitted) (internal quotation marks omitted). But in each of those cases the law had either not changed during the pendency of the appeal or the defendant was denied relief based on another of the plain-error prongs.[12] Consequently, the issue of when an error must be plain was not material to our

---

[11] The concurrence argues that we "prove too much" when we conclude the statement in *Rairdon* is dicta. More specifically, the concurrence claims one can reach a similar conclusion regarding the United States Supreme Court's discussion of the plainness prong in *Johnson*, 520 U.S. 461. But unlike *Rairdon*, the Court in *Johnson* did not assume without deciding the existence of an error that was plain. Instead, the *Johnson* Court expressly found the defendant had "satisfied" the "error" and "plainness" prongs of the plain error doctrine. 520 U.S. at 467-68.

[12] *Tscheu*, 758 N.W.2d at 863 (involving a case in which the law had not changed during the pendency of the appeal); *Arredondo v. State*, 754 N.W.2d 566, 574 (Minn. 2008) (same); *State v. Manthey*, 711 N.W.2d 498, 504 (Minn. 2006) (same); *State v.*

(Footnote continued on next page.)

analysis. Moreover, our reference to the *Rairdon* dicta in a few cases does not call into question our decision in *Baird*, 654 N.W.2d at 113, which squarely addressed the issue before us in this case.

Further, the rule proposed by the concurrence does not promote fairness. The concurrence argues that Kelley and the defendant in *Milton* are similarly situated, and therefore it is unfair for the court to conclude that the failure to explain the "intentionally aiding" element of accomplice liability to the jury was not "plain" error in *Milton*, but is "plain" error here. We disagree.

The concurrence contends Milton and Kelley are similarly situated because their appeals "arrived at this court in an identical procedural posture." *Infra* at C-1. If we were announcing a "plain-at-the-time-of-filing-the-appeal" rule, the concurrence's argument might have merit. But we are not announcing such a rule. Instead, we are adopting a "plain-at-the-time-of-appellate-review" rule. The phrase "appellate review" in this context means appellate review by a court on motion for new trial, posttrial motion, or on appeal. *See* Minn. R. Crim. P. 31.02. At the time we reviewed Kelley's conviction, he and Milton were no longer similarly situated because the law had changed during the pendency of Kelley's appeal. Because we conclude Milton and Kelley were not similarly situated at the time of appellate review, the concurrence's fairness argument is not persuasive.

---

(Footnote continued from previous page.)
*Blanche*, 696 N.W.2d 351, 375 (Minn. 2005) (same); *State v. Hunt*, 615 N.W.2d 294, 302 (Minn. 2000) (same); *State v. Pilot*, 595 N.W.2d 511, 518 (Minn. 1999) (same).

Moreover, any perceived unfairness in this case is the result of the law regarding retroactivity, not plain error. Under the *Teague* rule, "new rules" apply to (1) cases pending on direct appeal at the time of the new rule's announcement, and (2) cases arising after the rule is announced. *Chambers v. State*, 831 N.W.2d 311, 323 (Minn. 2013). Absent certain exceptions, "new rules" do not apply to defendants whose convictions were final at the time the new rule was announced. *Id.* Whenever a retroactivity line is drawn, an unfairness argument can be made. For example, suppose Milton and Kelley's appeals arrived at our court on the same day and in the same procedural posture. The opinions in *Milton* and *Kelley* are issued a week apart, neither defendant petitions for certiorari, and consequently Milton's conviction becomes "final" a week before Kelley's conviction. If the United States Supreme Court announces a new rule during the intervening week, Kelley will receive the benefit of the new rule because, unlike Milton, Kelley's conviction has not yet become final. In such an example, the only difference between Milton and Kelley is that we decided Milton's case first. Under the concurrence's argument, fairness would require us to deny Kelley the benefit of the new rule, even though his conviction had not yet become final. Followed to its logical conclusion, the concurrence's fairness argument effectively modifies our retroactivity jurisprudence by limiting the application of a new rule to cases that arise after the new rule is announced. Neither our case law nor the principles underlying retroactivity support such a limitation.

The concurrence's fairness argument *restricts* the relief available under Minn. R. Crim. P. 31.02 to errors that were plain at the time of trial. If we were to adopt the

23

narrow interpretation of Rule 31.02 proposed by the concurrence, state defendants would receive less relief than their federal counterparts. *See Henderson*, __ U.S. __, 133 S. Ct. 1121 (extending the relief available under the federal plain-error rule, Fed R. Crim. P. 52(b), to errors that were not plain at the time of trial but had become plain by the time of review). Although we have on occasion provided *greater* protection or relief to criminal defendants, we have never provided *less* relief than that available in federal court. *See State v. Ramey*, 721 N.W.2d 294, 301-02 (Minn. 2006) (shifting the burden of proving the impact of prosecutorial misconduct from the defendant to the State); *State v. Borst*, 278 Minn. 388, 397, 154 N.W.2d 888, 894-95 (1967) (extending right to court-appointed counsel to persons charged with misdemeanor offenses).

III.

Kelley next argues that the plain error affected his substantial rights. Specifically, Kelley argues that the evidence indicated S.A. did not know who actually took his property, and that a properly instructed jury could have concluded that Kelley's unidentified friend, and not Kelley, actually robbed S.A.

To convict Kelley as an accomplice of first-degree aggravated robbery, the State had to prove beyond a reasonable doubt that Kelley (1) knew his friend was going to commit the robbery, and (2) intended his presence to further the commission of the crime. *Milton*, 821 N.W.2d at 806; *State v. Mahkuk*, 736 N.W.2d 675, 682 (Minn. 2007). To establish that the erroneous accomplice liability jury instruction affected his substantial rights, Kelley has the heavy burden of proving that "there is a reasonable likelihood that giving the instruction in question had a significant effect on the jury verdict." *State v.*

24

*Gomez*, 721 N.W.2d 871, 880 (Minn. 2006); *accord Griller*, 583 N.W.2d at 741. An erroneous jury instruction will not ordinarily have a significant effect on the jury's verdict if there is considerable evidence of the defendant's guilt. *See, e.g.*, *State v. Montanaro*, 802 N.W.2d 726, 733 (Minn. 2011) (concluding that the self-defense jury instruction could not have had a significant effect on the jury's verdict because "no reasonable jury could find [defendant's] actions to be a reasonable use of force"); *State v. Larson*, 787 N.W.2d 592, 601 (Minn. 2010) (holding that defendant's substantial rights were not affected by allegedly erroneous accomplice liability jury instruction because there was "considerable evidence" of the defendant's intent that the victim be murdered); *Gomez*, 721 N.W.2d at 881 ("Given the totality of the evidence, it seems unlikely that the jury would have reached a different verdict.").

We conclude there is no reasonable likelihood that the erroneous jury instruction had a significant effect on the jury verdict because there is considerable evidence of Kelley's guilt, and his defense did not focus on accomplice liability. Specifically, there is considerable evidence in the record that Kelley knew his friend was going to commit the robbery and intended his presence to further the commission of the crime. Kelley met with his friend for a half hour shortly before the incident, and then they went outside together and Kelley's friend asked S.A. to come outside to meet with Kelley. The meeting beforehand and the friend's request that S.A. meet with Kelley support the conclusion that Kelley and his friend planned the ensuing attack and robbery.

Moreover, S.A. testified that Kelley and his friend "were searching through my pockets . . . then they rolled me over because they were going through my pockets . . .

25

and they were asking me 'where's your wallet.' " After Kelley and his friend had taken all S.A's belongings from his pockets, they continued kicking and hitting S.A. Kelley's presence and active participation in punching and kicking S.A., helping roll S.A. over to gain access to his back pockets, and rummaging through his pockets is strong proof that Kelley intended his presence to further the commission of the robbery. *See State v. Pierson*, 530 N.W.2d 784, 788 (Minn. 1995) (stating that "presence, companionship, and conduct before and after the offense are circumstances from which a person's participation in the criminal intent may be inferred").

Significantly, Kelley's defense at trial did not focus on accomplice liability. Indeed, in his closing argument, Kelley's defense counsel only briefly mentioned accomplice liability. Instead, Kelley focused his defense on the theory that S.A. had mistakenly identified him as one of the assailants, and he was not guilty as a principal. Kelley did not argue that he did not know the other person was going to commit the crime, or that he did not intend his presence to further the commission of the crime. Given Kelley's strategy to focus on liability as a principal and not as an accomplice, the error in the accomplice liability jury instruction was not prejudicial. *See State v. Davis*, 820 N.W.2d 525, 538 (Minn. 2012) (concluding that the defendant's trial strategy impacted whether trial error was prejudicial).

In sum, Kelley has failed to satisfy the third prong of the plain-error doctrine, and therefore he is not entitled to a new trial.[13]  We therefore affirm Kelley's conviction, although on different grounds than the court of appeals.

Affirmed as modified.

---

[13]    In light of our conclusion that Kelley's substantial rights were not violated, we need not address whether the error affected the fairness and integrity of the judicial proceedings. *See State v. Morton*, 701 N.W.2d 225, 234 (Minn. 2005) ("Only if the three prongs of [the plain-error] rule are satisfied will we assess whether we should address the error to ensure fairness and the integrity of the judicial proceedings.").

CONCURRENCE

STRAS, Justice (concurring).

The district court erred when it failed to explain to the jury what it means to "intentionally aid" another person in committing a crime. As the court observes, the error in this case is identical to the error from Eugene Milton's murder trial. *See State v. Milton*, 821 N.W.2d 789, 806-07 (Minn. 2012). In that case, we said that Milton was not entitled to relief for the deficient jury instruction because the error was not plain. *Id.* at 807. In this case, however, the court reaches the opposite conclusion. The question is why the court treats the two cases, both of which arrived at this court in an identical procedural posture, differently.

The answer, as the court admits, is simply that we decided Milton's appeal first. Specifically, the court adopts a rule that requires appellate courts to evaluate the plainness of an error at the time of appeal rather than at the time of trial. Based on that rule, the court concludes that the error was plain in Kelley's case, even though the law of accomplice liability was identical at the time of both trials. Because the court's approach is inconsistent with the text, history, and purpose of Minnesota's plain-error rule, I cannot join Part II of the court's opinion. Accordingly, I concur only in the judgment.

I.

I begin with the text of Minn. R. Crim. P. 31.02, which states that "[p]lain error affecting a substantial right can be considered by the court . . . on appeal even if it was not brought to the trial court's attention." The text of the rule provides a clue about its scope. The rule addresses "plain error" that could have been, but "was not[,] brought to

C-1

the trial court's attention." Minn. R. Crim. P. 31.02. Notably, the Minnesota rule specifically emphasizes that the focus is on whether a party could have brought the "plain error" to the *trial court's* attention. *Compare* Minn. R. Crim. P. 31.02 (referring to error that could have been "brought to the trial court's attention"), *with* Fed. R. Crim. P. 52(b) (referring to error that could have been "brought to the court's attention"). The text implies that the error must have been plain at *trial*, because if it had not been, then there would have been no "plain error" to bring to the *trial court's* attention.

While helpful, the text of Rule 31.02 does not definitively answer the question of whether the rule requires courts to evaluate the plainness of the error at the time of trial or at the time of appeal. However, the text does not provide the only clue to unlocking Rule 31.02's meaning. The history and purpose of the rule further explain its scope.

A.

At early common law, a defendant's failure to object to an error at trial resulted in the forfeiture of the right to have the alleged error reviewed on appeal. *See State v. Hayes*, 681 N.W.2d 203, 223 (Wis. 2004) (Sykes, J., concurring) (describing the common-law rule). However, the harshness of the common-law rule led to the creation of various exceptions, including an exception for plain error that affects a defendant's substantial rights. *See State v. Schumacher*, 424 N.W.2d 672, 676-79 (Wis. 1988) (describing various exceptions). Minnesota's plain-error standard, set forth in Rule 31.02, provides appellate courts with the discretion to remedy unpreserved errors, but only if (1) there is error; (2) the error is plain; and (3) the error affects the defendant's substantial rights. *See State v. Griller*, 583 N.W.2d 736, 740, 742 (Minn. 1998). If the

preceding requirements are satisfied, then an appellate court will address the error only if it seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Id.*

While Rule 31.02 provides a limited exception to the harsh consequences of the common-law forfeiture rule, it does not abandon its purpose, which was to encourage criminal defendants to contemporaneously object to any potential errors during a trial. *See State v. Ramey*, 721 N.W.2d 294, 298 (Minn. 2006) ("Applying the plain error doctrine encourages defendants to object at trial . . . ."). The plain-error standard provides an incentive for criminal defendants to object at trial by limiting the review of unpreserved errors on appeal and making relief discretionary. *State v. Pearson*, 775 N.W.2d 155, 161 (Minn. 2009); *Ramey*, 721 N.W.2d at 298-99. Preserving an incentive to object is important because contemporaneous objections alert the trial court to potential errors when there is still an opportunity to correct them. *See Ramey*, 721 N.W.2d at 298-99 (explaining that contemporaneous objections "[are] preferred because the district court is in an [sic] unique position to [rule on the issue]"); *Rairdon v. State*, 557 N.W.2d 318, 323 n.5 (Minn. 1996) ("Objections provide the trial court an opportunity to prevent or cure the effects of [an error] and enhance a reviewing court's ability to make adequate judgments of whether [an error] has in fact occurred." (citation omitted)); *see also, e.g.*, *People v. Carines*, 597 N.W.2d 130, 138 (Mich. 1999) ("Trial is 'by far the best time to address a defendant's constitutional *and* nonconstitutional rights.' " (quoting *People v. Grant*, 520 N.W.2d 123, 130 (Mich. 1994))).

A different rule—one that treats unpreserved and preserved errors alike—would permit defendants to lie in wait and raise an error on appeal if they do not receive a favorable result at trial. In contrast, the plain-error standard, which raises the bar for relief based on unpreserved errors, discourages the strategic withholding of objections in order to gain the proverbial "second bite at the apple" on appeal. *See Puckett v. United States*, 556 U.S. 129, 134, 140 (2009).

Assessing plainness at the time of trial better serves the objective of encouraging criminal defendants to contemporaneously object to potential errors that occur during a trial. Error that is plain—that is, clear or obvious, *see Ramey*, 721 N.W.2d at 302—when it is committed by definition is (or should be) apparent to the trial court. When an error is plain at the time of trial, the trial court should be able to recognize and correct the error without the parties' help, so there is less reason to insist on an objection that may be unnecessary. And because there is little benefit from requiring a party to inform the trial court about an error that is obvious, there is correspondingly little damage done to the contemporaneous-objection requirement when relief is granted for an unpreserved error that was plain at the time of trial.[1] *See Henderson v. United States*, __ U.S. __, __, 133

---

[1] I do not mean to suggest that there is no incentive to object to a plain error at trial. The primary incentive, of course, is that the trial court, once informed of the error, might remedy it before it occurs. Moreover, the plain-error rule is harder to satisfy than the harmless-error rule—which governs appellate review of preserved error—even when an error is plain. In particular, as I have explained elsewhere, the plain-error standard generally places the burden of showing prejudice on the party seeking relief, makes relief discretionary, and sets a high bar for the exercise of that discretion. *See State v. Little*, 851 N.W. 2d 878, 888-89 (Minn. 2014) (Stras, J., concurring in part, dissenting in part) (contrasting the plain-error and harmless-error standards).

S. Ct. 1121, 1132 (2013) (Scalia, J., dissenting) ("Objection is not so much needed when the error ought to be plain to the court and to the prosecution."); *State v. Eldredge*, 773 P.2d 29, 36 (Utah 1989) ("[W]hen an error is plain, a trial court can legitimately be said to have had a reasonable opportunity to address and correct it, even in the absence of an objection."). In short, a plain-at-the-time-of-trial rule tempers the harshness of forfeiture in cases in which an objection is largely unnecessary, while it leaves the incentive to object in place for those instances in which an objection is most helpful to the trial court in ensuring that the defendant receives a fair trial.[2] *See Ramey*, 721 N.W.2d at 299 ("The [plain-error] doctrine employs a careful balancing of our need to encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly redressed." (citations omitted) (internal quotation marks omitted)).

The plain-at-the-time-of-appeal rule, in contrast, turns the plain-error rule from a neatly tailored complement to the contemporaneous-objection requirement into a lottery for dilatory litigants. A straightforward example illustrates the inequities of the rule that

---

[2] A plain-at-the-time-of-trial rule generally assesses whether an error is plain at the time that the error occurs, rather than at some other point in a criminal defendant's trial. Nevertheless, I adopt the broad phrase, "plain at the time of trial," to account for the possibility that, for a limited class of errors, a criminal defendant can adequately preserve a claim by raising an objection at a subsequent point during a trial. *See, e.g.*, Minn. R. Crim. P. 26.03, subd. 12(*l*) (giving parties an opportunity to raise objections and request curative instructions after closing arguments, outside the jury's presence); *id.*, subd. 19(4)(f) ("Objections to instructions claiming error in fundamental law or controlling principle may be included in a motion for a new trial even if not raised before deliberations.").

the court adopts.  Suppose that the trials of two defendants occur on the same day and the trial court in each case reads the same model jury instruction to the jury.  There is no case law indicating whether the model instruction accurately states the law, and neither defendant objects to the instruction.  Both defendants are found guilty, convicted, and then appeal.  The cases go before different panels of the court of appeals—again on the same day—and each defendant argues that the model instruction was erroneous.  One panel finishes its opinion faster.  It determines that the jury instruction was erroneous, but that the defendant is not entitled to relief because the error was not plain.  The other panel issues its decision a few days later and reaches the same conclusion about the jury instruction.  This time, however, the panel *must* hold that the second defendant is eligible for relief (assuming that the other requirements of the plain-error standard are met), because the error has now become plain in light of the first panel's decision, even though the error—and everything else about the case—is identical to the first case.  I see no logical reason to treat the two cases differently when the differing treatment is based on nothing more than which of the two appeals happens to be decided first.

The above example is an abstracted summary of this case and *State v. Milton*.[3]  The court insists that Kelley and Milton are not similarly situated because Milton's appeal was decided first.  Specifically, the court states that Milton and Kelly are "no longer similarly situated because the law ha[s] changed during the pendency of Kelley's

---

[3]     Of course, the two cases here did not proceed concurrently, as in the example, but they may as well have because the law of accomplice liability did not change between the two trials.

appeal." That is precisely my point. The fact that Milton's appeal came first is happenstance, and making the availability of relief turn on that fact does not encourage contemporaneous objections, promote fairness, or serve any other conceivable purpose of the plain-error rule. The court says that, by treating Kelley and Milton alike, I "do[] not promote fairness." The court confuses fairness with leniency, apparently motivated by the desire to give relief to as many defendants as possible. As I understand it, fairness means treating similarly situated people similarly, so there is nothing unfair about insisting that we treat Kelley and Milton alike when their appeals are identical in all relevant respects. *Cf. Desist v. United States*, 394 U.S. 244, 258 (1969) (Harlan, J., dissenting) (arguing that when a court is presented with similarly situated defendants, "we must grant [or not grant] the same relief or give a principled reason for acting differently"). By contrast, fairness is ill served by the court's rule, under which Milton, who brought this instructional error to our attention, did not receive any benefit from his efforts, while Kelley, who may not even have raised the issue if not for Milton, enjoys the benefit of the rule from Milton's case.

Moreover, even aside from its inequities, the plain-at-the-time-of-appeal rule weakens the incentives for criminal defendants to identify and bring potential errors to the trial court's attention. *Cf. Henderson*, __ U.S. at __, 133 S. Ct. at 1134 (Scalia, J., dissenting) ("It is remarkably naïve to disbelieve the proposition that lessening the costs of noncompliance with [the contemporaneous-objection requirement] diminishes the incentives to be diligent in objecting."). And it does so in instances in which a contemporaneous objection is most valuable. The facts of this case illustrate the point.

At the time of Kelley's trial, we had never specifically said that a district court is required to explain to the jury what it means to "intentionally aid[]" another under Minn. Stat. § 609.05, subd. 1 (2012), but, as we later recognized in *Milton*, our cases *had* implied that such an explanation was necessary. *See Milton*, 821 N.W.2d at 807. Had Kelley contemporaneously objected to the accomplice-liability instruction at trial and referred the district court to *State v. Mahkuk*, 736 N.W.2d 675, 682 (Minn. 2007)—the case relied upon in *Milton*—it is possible the district court would have concluded that the model accomplice-liability jury instruction was deficient and would have corrected the instruction. In other words, a contemporaneous objection in this case could have prevented the error altogether by allowing the district court to make a deliberate, informed decision about the legal accuracy of the accomplice-liability model jury instruction. *Cf. Henderson*, __ U.S. at __, 133 S. Ct. at 1133 (Scalia, J., dissenting) ("In the difficult and often hectic process of conducting a trial, a judge depends on the parties—'officers of the court'—to flag less-than-obvious issues that might otherwise escape his notice.").

B.

The court agrees that "the plain-at-the-time-of-trial rule encourages timely objections at trial," but considers that fact irrelevant because the only purpose of the plain-error rule "is to provide a means for an appellate court to remedy unobjected-to errors." The court's insistence that the forfeiture rule and the plain-error rule "have different purposes and are guided by different principles" is both confused and confusing.

The court's position is confused because the plain-error rule does not actually have a different purpose than the common-law forfeiture doctrine. We have repeatedly recognized that the purpose and effect of the plain-error rule, like the common-law forfeiture doctrine, is to encourage contemporaneous objections. *See, e.g., Pearson*, 775 N.W.2d at 161 ("The plain error doctrine encourages defendants to object while in the trial court so that any errors can be corrected before their full impact is realized."); *Ramey*, 721 N.W.2d at 298-99; *see also Puckett*, 556 U.S. at 134-36 (recognizing that the plain-error rule is tied directly to the contemporaneous-objection requirement as it "sets forth the consequences" for failing to object and promotes "judicial efficiency").

The court's position is confusing because the court elsewhere states that the plain-error rule "carefully balances" the dual purposes of encouraging contemporaneous objections and allowing appellate courts to correct prejudicial error. The court's inconsistency on this point is understandable, however, because it would be impossible to explain why the rule limits appellate courts to correcting *only* plain errors if its only purpose were "providing a means for appellate courts to remedy forfeited errors." If the plain-error rule really is just an invitation for appellate courts to review unpreserved errors to avoid "a serious miscarriage of justice," as the court suggests, there would be no reason for the rule to be concerned with the plainness of the error at all. After all, the third and fourth prongs of the plain-error standard are adequate to ensure that the error is sufficiently important to merit reversal. *See Griller*, 583 N.W.2d at 740. Accordingly, the fact that the rule *does* require the error to be plain, Minn. R. Crim. P. 31.02; *see also*

*Griller*, 583 N.W.2d at 740, demonstrates that error correction is not, and cannot be, the only purpose of the plain-error rule.[4]

In my view, the rule that strikes the proper balance between remedying errors and encouraging timely objections is the plain-at-the-time-of-trial approach, not an approach that turns on which appeal happens to be decided first.

## II.

The court offers four additional justifications for the plain-at-the-time-of-appeal approach. None is persuasive.

## A.

The court first claims that precedent dictates its decision in this case. In particular, the court relies on a statement from *State v. Baird* that, " '[t]o satisfy the second prong [of

---

[4]    The court elsewhere says that, "[a]lthough we have on occasion provided *greater* protection or relief to criminal defendants, we have never provided less relief." In emphasizing the point further, the court implies that, if criminal defendants in Minnesota were to "receive less relief than their federal counterparts," it would somehow be unjust or conflict with precedent. Coupled with the court's discussion of the plain-error standard, which it says is concerned primarily with remedying unfairness, the clear implication is a one-way ratchet in favor of criminal defendants, requiring Minn. R. Crim. P. 31.02 to provide at least as much, and sometimes more, protection to criminal defendants than the corresponding federal rule. However, in contrast to parallel constitutional provisions, in which the United States Constitution provides a floor with respect to those rights that are incorporated against the states, *California v. Greenwood*, 486 U.S. 35, 43 (1988); *State v. Fuller*, 374 N.W. 2d 722, 726-27 (Minn. 1985); *O'Connor v. Johnson*, 287 N.W. 2d 400, 405 (Minn. 1979), nothing prevents a state court from adopting a procedural rule that provides less protection to criminal defendants than a comparable federal rule. To the extent that the court concludes otherwise, it is wrong. Our task in interpreting procedural rules is to adopt the better interpretation of the rule's text, *see State v. Underdahl*, 767 N.W.2d 677, 682 (Minn. 2009), whether or not the interpretation we adopt is more or less restrictive than a corresponding federal rule. Notably, the court's analysis hardly addresses the text of Rule 31.02 at all, much less explains why its interpretation more closely aligns with the rule's text.

the plain-error rule,] it is sufficient that the error is plain *at the time of appeal*.' " 654 N.W.2d at 113 (quoting *Griller*, 583 N.W.2d at 741). The statement from *Baird* supports the court's approach, to be sure, but the truth is that our statements on the topic have been varying and inconsistent. For example, we stated as follows in *Rairdon v. State*: "the trial error must have been so clear *under applicable law at the time of conviction . . .* that the defendant's failure to object—and thereby present the trial court with an opportunity to avoid prejudice—should not forfeit his right to a remedy." 557 N.W.2d 318, 323 (Minn. 1996) (emphasis added). In a number of subsequent cases, we relied on *Rairdon* as support for a plain-at-the-time-of-trial rule. *See, e.g.*, *State v. Tscheu*, 758 N.W.2d 849, 863 (Minn. 2008); *State v. Manthey*, 711 N.W.2d 498, 504 (Minn. 2006); *State v. Pilot*, 595 N.W.2d 511, 518 (Minn. 1999).

However, we did not so much as acknowledge *Rairdon* in *Baird*, or in *State v. Griller*, the decision on which *Baird* relied. Indeed, we have never given much attention to the timing of the plainness requirement in any of our opinions, which likely accounts for our varying statements. In *Griller*, the State conceded that the error was plain under the federal plain-error rule and did not ask us to adopt a different approach under Minnesota law. *See* 583 N.W.2d at 741 (citing *Johnson v. United States*, 520 U.S. 461, 468 (1997)). And in *Baird*, far from "squarely address[ing] the issue" as the court claims, we simply quoted our statement in *Griller* without comment or analysis. *See* 654 N.W.2d at 113. In fact, *Rairdon* probably contains our most complete analysis on the question because we actually provided a reason for selecting one approach over the other. Specifically, we stated that a plain-at-the-time-of-trial rule ensured that the defendant

C-11

could not "reap any benefit from [intervening changes in the law] merely because he waited nine years to seek review." *Rairdon*, 557 N.W.2d at 323. *Compare id.*, *with Baird*, 654 N.W.2d at 113, *and Griller*, 583 N.W.2d at 741.

The court dismisses our statement in *Rairdon* as dicta, however, because we ultimately determined that any error in that case had not affected the defendant's substantial rights. *See Rairdon*, 557 N.W.2d at 324-25. Thus, according to the court, our articulation of the plainness requirement in *Rairdon* "was not essential to our decision." The court's broad pronouncements about dicta undermine its own analysis and prove too much. Under the court's approach, key aspects of our articulation of the plain-error rule in *Griller* were "mere dicta," as were the Supreme Court's statements about the first three prongs of the plain-error rule in landmark cases such as *Johnson* and *United States v. Olano,* 507 U.S. 725 (1993)—decisions that the court relies on to support its preference for the plain-at-the-time-of-appeal rule. *See Griller*, 583 N.W.2d at 742 (concluding that the defendant had not satisfied the fourth prong); *see also Johnson*, 520 U.S. at 470 (concluding that the defendant had not satisfied the fourth prong); *Olano*, 507 U.S. at 741 (concluding that the defendants had not satisfied the third prong). Even the analysis from *Milton*, which forms the basis of Kelley's appeal, would be dicta under the court's approach because our discussion of the error in that case—that the jury was not told what it means to "intentionally aid" another in committing a crime—was not essential to our ultimate conclusion that Milton was not entitled to relief. *See* 821 N.W.2d at 807.

Only by disregarding a line of cases can the court conclude that precedent requires us to adopt the plain-at-the-time-of-appeal approach. *See, e.g.*, *State v. Bobo*, 770

N.W.2d 129, 143-44 (Minn. 2009); *Tscheu*, 758 N.W.2d at 863; *Arredondo v. State*, 754 N.W.2d 566, 574 (Minn. 2008); *Manthey*, 711 N.W.2d at 504; *State v. Blanche*, 696 N.W.2d 351, 375 (Minn. 2005); *State v. Hunt*, 615 N.W.2d 294, 302 (Minn. 2000); *Pilot*, 595 N.W.2d at 518. In short, even a cursory review of our cases from the past 20 years reveals that we have never actually resolved which rule—plain-at-the-time-of-trial or plain-at-the-time-of-appeal—controls under Rule 31.02. *Compare, e.g.*, *Tscheu*, 758 N.W.2d at 863 (following *Rairdon*), *with, e.g.*, *State v. Jones*, 753 N.W.2d 677, 689 (Minn. 2008) (following *Baird* and *Griller*). Accordingly, this case presents us with a clear opportunity to reconcile our cases and to definitively decide which of the two rules is more consistent with Rule 31.02. *Cf. Oanes v. Allstate Ins. Co.*, 617 N.W.2d 401, 405-06 (Minn. 2000) (stating that the contradiction between two lines of cases can be "sufficient to override stare decisis concerns").

### B.

The court correctly observes that the Supreme Court of the United States decided in *Henderson v. United States* that whether an error is plain must be determined at the time of appeal, not at the time of trial, under Fed. R. Crim. P. 52(b). __ U.S. at __, 133 S. Ct. at 1130-31. The court goes on, however, to treat *Henderson* as if it were binding on this court. For example, the court says that the Supreme Court's reaffirmation of the plain-at-the-time-of-appeal rule in *Henderson* is even "[m]ore important[]" than our own precedent on the issue.

The court seems to forget that we have routinely interpreted our own rules of procedure independently of the Supreme Court, particularly when the language of our

rule is different from a corresponding federal rule, because the Supreme Court's interpretation is " 'instructive,' but not binding" on us. *Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 603 (Minn. 2014) (quoting *T.A. Schifsky & Sons, Inc. v. Bahr Constr., LLC*, 773 N.W.2d 783, 787 n.3 (Minn. 2009) (declining to adopt the "plausibility" standard from *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in the context of a motion to dismiss brought under Minn. R. Civ. P. 12.02(e)). In *Ramey*, for instance, we held that, in cases involving prosecutorial misconduct, the State bears the burden of persuasion to disprove an effect on a defendant's substantial rights under the plain-error standard, even though the approach we adopted was inconsistent with Supreme Court case law. 721 N.W.2d at 301-02; *see also id.* at 303 (Anderson, Paul, J., concurring) (recognizing that "the majority's holding represent[ed] a sharp and radical departure—a 180° turn—from our court's and the United States Supreme Court's jurisprudence as to the burden of persuasion on the third prong of the plain error test"). There is no reason we cannot adopt our own interpretation of Minn. R. Crim. P. 31.02 in this case, just as in *Ramey*. At the very least, *Ramey* and *Walsh* establish that the Supreme Court's interpretation of a federal rule is not binding on us, particularly when the language of our rule differs from its federal counterpart.[5]

---

[5]     *Compare* Minn. R. Crim. P. 31.02 ("Plain error affecting a substantial right can be considered by the court on motion for new trial, post-trial motion, or on appeal even if it was not brought to the trial court's attention."), *with* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.").

C.

The court also invokes the principle that appellate courts generally apply the law in effect at the time of their decision.  The court correctly articulates that venerable principle, but then fails to acknowledge that a plain-at-the-time-of-trial rule is also consistent with that principle.  Appellate courts have long been required to "apply the law in effect at the time [they] render [their] decision."  *Bradley v. Sch. Bd. of City of Richmond*, 416 U.S. 696, 711 (1974); *see also United States v. Schooner Peggy*, 5 U.S. (1 Cranch) 103, 110 (1801) (articulating the rule).

However, recitation of the general principle provides guidance only on how to determine *whether* an error exists, not the point at which an appellate court must evaluate the *plainness* of that error.  In fact, the court's approach mistakenly conflates two analytically distinct concepts: the law of retroactivity and plain-error review.  In criminal cases, retroactivity is about what law to apply, which usually turns on whether a case has become final.[6]  *See State v. Houston*, 702 N.W.2d 268, 271 (Minn. 2005) (stating that "[t]he principle of finality is key" in determining whether changes in the law are retroactive).  Plain-error review, by contrast, is about determining whether to remedy a

---

[6]     The court is correct when it states that the law of retroactivity can lead to inconsistent treatment of criminal defendants, but the court presents no reason why inconsistent treatment in one area justifies inconsistent treatment in another area.  In the retroactivity context, inconsistent treatment of defendants is sometimes required by the "principle of finality[,] which is essential to the operation of our criminal justice system." *Teague v. Lane*, 489 U.S. 288, 309 (1989) (plurality opinion); *see also Chambers v. State*, 831 N.W.2d 311, 325 (Minn. 2013) (noting the importance of "finality and providing a bright-line rule for when relief is to be retroactive").  However, the court proposes no correspondingly important value justifying differing treatment of defendants in plain-error review.

forfeited error. In assessing whether an error is plain, we have never asked whether a rule of criminal procedure is retroactive.

The court nevertheless asserts that, if "[f]ollowed to its logical conclusion," a plain-at-the-time-of-trial rule would "effectively modif[y] our retroactivity jurisprudence by limiting the application of a new rule to cases that arise after the new rule is announced." The court's erroneous critique is simply a product of its misplaced belief that there is an inextricable link between retroactivity and plain-error review. In reality, whatever rule we adopt in this case will have no impact on our retroactivity jurisprudence because the difference between the plain-at-the-time-of-trial and the plain-at-the-time-of-appeal approaches relates solely to whether a criminal defendant is entitled to relief from forfeiture under Minn. R. Crim. P. 31.02. After all, whether an error is plain is not about "*what* the law is" but "*how clear* the law is," *United States v. Escalante-Reyes*, 689 F.3d 415, 429 (5th Cir. 2012) (Smith, J., dissenting), and there is no reason why a rule or statute focusing on the latter question must necessarily be limited to the law in effect at the time of decision, *cf. Landgraf v. USI Film Prods.*, 511 U.S. 244, 273-80 (1994) (explaining that the law in effect at the time of decision generally governs unless a statute states otherwise).

D.

Finally, the court is concerned that assessing whether an error was plain when it occurred would be "cumbersome and complex" and would call for "a kind of temporal ping-pong." The court's apparent concern is that it would be disorienting for an appellate court to first examine current law to determine whether an error has occurred and then

C-16

turn to the law governing the error at the time of trial to determine whether the error was plain.

Courts routinely look to the laws and facts in existence at various times. It may be inconvenient, but the inquiry "is really not all that hard." *Henderson*, __ U.S. at __, 133 S. Ct. at 1135 (Scalia, J., dissenting). In postconviction cases, for example, we routinely decide both what the law was at the time of conviction and whether the petitioner knew or should have known about a legal claim on direct appeal. *See King v. State*, 649 N.W.2d 149, 156 (Minn. 2002) (applying the procedural bar from *State v. Knaffla*, 309 Minn. 246, 243 N.W.2d 737 (1976)). And in official-immunity cases, we evaluate the law in effect at the time of an injury to determine whether the law clearly prohibited a public official's discretionary actions when they occurred. *See Rico v. State*, 472 N.W.2d 100, 107-09 (Minn. 1991). There is nothing to suggest that a retrospective examination of the law in plain-error cases would be any more taxing on courts than in these other areas of the law.

### III.

For the foregoing reasons, I would affirm Kelley's conviction on the ground that the error in his case was not plain.